UNITED STATES of America,
Plaintiff-Appellee,

v.

Richard T. NEYENS,
Defendant-Appellant.

No. 86–3161.

United States Court of Appeals,
Seventh Circuit.

Argued May 19, 1987.
Decided Sept. 16, 1987.

John Malvik, Rock Island, Ill., for defendant-appellant.

L. Lee Smith, Asst. U.S. Atty., Peoria, Ill., for plaintiff-appellee.

Before WOOD, and CUDAHY, Circuit Judges, and ESCHBACH, Senior Circuit Judge.

HARLINGTON WOOD, Jr., Circuit Judge.

Defendant Richard Neyens was charged in a sixteen-count indictment with crimes arising from his participation in various kickback schemes while he worked as a steel purchaser for John Deere & Co. (Deere). Pursuant to a plea agreement, Neyens pled guilty to six counts of the indictment involving violations of 18 U.S.C. § 371 (conspiracy), 18 U.S.C. § 1341 (mail fraud), 18 U.S.C. § 1343 (wire fraud), and 18 U.S.C. § 2314 (interstate transportation of property taken by fraud). The district judge imposed the fifteen-year maximum sentence provided for in the plea agreement. Neyens appeals this sentence, contending that it is excessive when compared with the sentences received by his codefendants and that the district judge abused his discretion by failing to consider certain mitigating factors. In addition, Neyens argues that the district judge violated the doctrine of separation of powers by usurping the executive branch function of determining a parole release date, and was impermissibly prejudiced against him. We find none of these contentions persuasive and therefore affirm the sentence imposed by the district court.

## I. FACTUAL BACKGROUND

Prior to working at Deere Neyens taught college courses and published numerous articles. In 1972 he was selected as an "Outstanding Educator of America." But then Neyens began his employment at Deere in June 1979, working in Moline, Illinois. By November he was responsible for purchasing steel-cutting services. Two years later he had achieved the status of senior buyer and was responsible for selecting vendors, negotiating contracts and prices, and placing steel orders.

Concurrent with his employment at Deere Neyens entered into a partnership with Roger Streeter and established the Quad City Steel Cutting Corp. (QCSC) headquartered in Iowa. At the time Neyens achieved his senior buyer status he was ordering large amounts of steel from

QCSC. Neyens would telephone Streeter in Iowa and inform him of the type and amount of steel that Deere required. Streeter would contact several steel warehouses, be quoted a price, and inform Neyens. Neyens would then prepare the Deere purchase order as well as a QCSC invoice. This invoice would reflect a price markup for the steel which, as both Neyens and Streeter knew, could have been ordered more cheaply from the warehouses from which QCSC would ultimately purchase the steel to resell to Deere. In 1981 and 1982 Neyens placed approximately 250 orders for steel with QCSC.

The success of this scheme spawned other profit-making activities by Neyens. Beginning in July 1981, Neyens began ordering steel from Knoxville Allied Steel (KAS) in Knoxville, Tennessee. KAS was created by Neyens in 1981 in partnership with Thomas Timm. In August 1981, Timm started making payments to Neyens to ensure that Neyens would continue to order steel from KAS. In addition, in late 1981 or early 1982, Neyens offered to coordinate a kickback scheme between KAS and another Deere steel buyer. Neyens and this steel buyer agreed that ten percent of the kickback funds would be kept for the IRS and the remainder would be equally divided between them.

The procedures employed by Neyens in his dealings with KAS were essentially the same as those used when making his bogus deals with QCSC. Neyens would telephone KAS and provide Timm with specifications of the steel needed by Deere. Timm would obtain a quoted price from a third-party steel warehouse, mark it up, and give the modified quote back to Neyens. KAS would then draw checks on the KAS account, make them payable to a fictitious person, and according to Neyens' instructions mail them to Neyens' address. Throughout this period, from May 1980 until April 1984, Neyens would have these KAS and QCSC checks cashed by his brother-in-law, Bernard Orey, who would then return the cash to Neyens.

In January 1986 indictments were filed against Neyens, Streeter, Timm, and Orey. In August of that year, pursuant to a plea agreement, Neyens pled guilty to six counts of the indictment in exchange for the dismissal of the remaining nine counts.[1] The plea agreement provided that the defendant be sentenced on each of three counts to a maximum of five years for a possible total of fifteen years. On the remaining three counts it provided for no more than five years probation. In addition, it recommended that Neyens pay restitution to Deere in an amount not exceeding $822,823.

After permitting counsel to challenge the presentence report and providing Neyens with an opportunity to make a statement, the district court imposed the maximum sentence allowed: fifteen years imprisonment, five years probation, and restitution in the amount of $799,221.

During separate proceedings codefendant Streeter pled guilty to two counts of the indictment. On Count I, under which Neyens was sentenced to five years, Streeter was sentenced to three years imprisonment. Streeter received five years probation on the second count. He was also ordered to pay approximately $25,000 in restitution. Codefendant Timm also pled guilty to two counts of the indictment. On Count X, under which Neyens received five years, Timm was sentenced to four years. Like Streeter, Timm also received five years probation, and was ordered to pay approximately $173,000 in restitution. Codefendant Orey pled guilty to two counts. The court sentenced Orey to nine months in prison on Count X and five years probation on Count I. In addition, Orey was ordered to pay $50,000 in restitution.

## II. DISCUSSION

### A. Excessive Sentence

■ Neyens contends that the sentence imposed by the district judge is excessive in light of the sentences meted out to his codefendants. The standard of appellate review in cases challenging a sentence on

---

1. The tenth count of the indictment was dismissed without prejudice on July 11, 1986.

grounds of excessiveness is well-established and narrow. "This court 'may not change or reduce a sentence imposed within the applicable statutory limits on the ground that the sentence was too severe unless the trial court relied on improper or unreliable information in exercising its discretion or failed to exercise any discretion at all in imposing the sentence.' " [2] *United States v. Hoffman*, 806 F.2d 703, 713 (7th Cir.1986) (quoting *United States v. Fleming*, 671 F.2d 1002, 1003 (7th Cir.1982)), *cert. denied*, —— U.S. ——, 107 S.Ct. 1627, 95 L.Ed.2d 201 (1987).

In challenging his sentence as excessive Neyens does not allege that the sentence exceeds statutory limits, that the district judge used improper or unreliable information in determining the sentence, or that the judge exercised no discretion at all. Defendant instead relies on the disparity between his and his codefendants' sentences. In this circuit, however, it is settled law that a defendant who argues disparity alone has not made out a claim of an improper exercise of the district court's discretion, let alone a claim that no discretion at all has been employed. *United States v. Peters*, 791 F.2d 1270, 1303 (7th Cir.), *cert. denied*, —— U.S. ——, 107 S.Ct. 168, 93 L.Ed.2d 106 (1986). All that is required regarding the equality of sentences among codefendants, as a general matter, is that the district judge give "thoughtful consideration to the sentences which he impose[s]." *United States v. Santiago*, 582 F.2d 1128, 1137 (7th Cir. 1978). Only when a judge imposes disparate sentences on similar defendants without explanation does even an inference of impropriety arise. *United States v. Ely*, 719 F.2d 902, 906 (7th Cir.1983).

It is apparent from the record that the district judge acted properly. In sentencing the defendant as well as the codefendants, the district judge repeatedly referred to Neyens' pivotal leadership role in the kickback schemes. The judge characterized Neyens as the "mainman," "kingpin," and "corrupter of other people." It is clear from the record that these illustrative terms are appropriate. Neyens was the instigator and promoter of these schemes as well as the primary beneficiary. We have recognized that considerations of the extent and nature of a defendant's role in a scheme is a sound basis for disparate sentences among codefendants. *See Peters*, 791 F.2d at 1304; *Santiago*, 582 F.2d at 1137. Another factor that weighed heavily in the district judge's decision was that Neyens had breached a position of trust with his employer, Deere. This too is an acceptable factor for inclusion in a judge's determination of the severity of sentence. *See United States v. Marquardt*, 786 F.2d 771, 782 (7th Cir.1986); *United States v. Brubaker*, 663 F.2d 764, 769 (7th Cir.1981). Still another factor was the degree to which Neyens profited from his activities, which was almost four times as great as that of his nearest codefendant. Given these factors we cannot say that the judge's sentencing decision was devoid of the type of thoughtful consideration required to ensure an appropriate punishment designed to fit both the crime and criminal.

### B. Abuse of Discretion

■ The defendant argues that the district judge abused his discretion in allegedly failing to consider certain mitigating factors. These factors include a lack of any prior criminal record and the defend-

---

2. The new standard of review for sentencing, 18 U.S.C. § 3742(d), which will go into effect November 1, 1987, provides that:

   Upon review of the record, the court of appeals shall determine whether the sentence—
   (1) was imposed in violation of the law;
   (2) was imposed as a result of an incorrect application of the sentencing guidelines; or
   (3) is outside the range of the applicable sentencing guideline, and is unreasonable, having regard for—

   (A) the factors to be considered in imposing a sentence, as set forth in chapter 227 of this title; and
   (B) the reasons for the imposition of the particular sentence, as stated by the district court pursuant to the provisions of section 3553(c).

   The court of appeals shall give due regard to the opportunity of the district court to judge the credibility of the witnesses, and shall accept the findings of fact of the district court unless they are clearly erroneous.

ant's status in the community as a successful educator.

" 'A district court has wide discretion in determining what sentence to impose,' and in deciding what sentence is appropriate, 'the weight to be given various factors is [also] within the discretion of a sentencing court.' " *Marquardt,* 786 F.2d at 782 (quoting *United States v. McCoy,* 770 F.2d 647, 648 (7th Cir.1985) and *United States v. Wilkins,* 659 F.2d 769, 773 (7th Cir.), *cert. denied,* 454 U.S. 1102, 102 S.Ct. 681, 70 L.Ed.2d 646 (1981)). Given the breadth of this discretion, review is limited. As long as it appears that the sentencing judge is aware of the mitigating factors, and that he has considered them in good faith, the degree of weight put on those factors will seldom be questioned. *See United States v. Main,* 598 F.2d 1086, 1094 (7th Cir.), *cert. denied,* 444 U.S. 943, 100 S.Ct. 301, 62 L.Ed.2d 311 (1979).

Defendant relies on the following statement of the judge in arguing that the district judge considered mitigating circumstances only in context of the plea agreement and not at sentencing:

> As to you [appellant], you do not have any prior criminal record. You had maintained a certain status in the community, and that is arguably a mitigating factor. I would suggest that in assessing the sentence to be imposed, quite frankly, I considered that more in the context of whether or not I should accept the [plea] agreement or not as opposed to whether or not you were entitled to certain specific reductions below the fifteen years.

This language does not, as the defendant contends, indicate that the district judge failed to consider Neyens' lack of a prior criminal record or his community service in mitigation of the sentence. What the language does show is that the district judge considered the factors, but did not place a great deal of weight on them in light of what he considered to be the seriousness of Neyens' offenses and conduct. That they were considered during the sentencing was evident from the district judge's commentary on the defendant's professional success.

The fact that the district judge considered the mitigating factors "more in the context" of the acceptance of the plea agreement does not mean that the district judge did not consider them at all during sentencing. The district judge's statement necessarily implies that he did consider those factors during sentencing, although he may not have weighed them as heavily during sentencing as he did during the plea proceeding. The extent to which a variety of factors may be considered by the district court, either more or less, is within the discretion of the court. *Marquardt,* 786 F.2d at 782. Since it appears from the record that the district judge was aware of the mitigating circumstances and in fact considered them we find no abuse of discretion.

## C. Prejudice

■ Neyens contends the district judge was predisposed to impose the maximum sentence and was thereby prejudiced against him. Defendant again relies on the passage of the sentencing proceeding quoted above, which he argues indicates that the district judge considered mitigating factors only as an afterthought that might reduce the already predetermined fifteen-year sentence.

First, in arguing that the district judge was prejudiced Neyens fails to show, or even contend, that the district judge relied on extra-judicial information, which is the hallmark of a prejudice claim. *United States v. Grinnell Corp.,* 384 U.S. 563, 583, 86 S.Ct. 1698, 1710, 16 L.Ed.2d 778 (1966); *United States v. Johnson,* 658 F.2d 1176, 1178 (7th Cir.1981).

Second, Neyens would have us find fault with the chronology of the district judge's consideration of factors in determining the sentence. Whether the district judge arrives at a final sentence by weighing a variety of factors, determining an appropriate sentence based on those factors, and then considering mitigating factors to reduce the sentence, or whether he considers mitigating factors in the jumble of other factors prior to determining the final sentence is of no practical significance. All

that is important is that the mitigating factors be considered prior to the imposition of the final sentence. Here, as has already been discussed, the district judge did in fact consider the mitigating circumstances in determining an appropriate sentence. The fact that they were given less weight than the defendant desired and thus had no impact on the length of sentence is not sufficient grounds to make out a claim of prejudice.

## D. Separation of Powers

During sentencing the district judge stated Neyens should serve a minimum of five years behind bars.[3] To ensure that Neyens would be incarcerated for this period of time the district court imposed three five-year prison terms. This fifteen-year sentence would, under the district judge's interpretation of the applicable parole statute, 18 U.S.C. § 4205(a) (which mandates eligibility for parole after one-third of the sentence is served),[4] ensure that Neyens would be in prison with no chance of parole for at least five years. Neyens contends that the district judge believed Neyens should only be sentenced to five years, but in order to ensure that he serve that five years without opportunity for parole the district judge imposed a fifteen-year sentence. Neyens argues that this is an attempt to set a term of imprisonment without parole and is an usurpation of the executive branch function of determining when a prisoner should be released from prison on parole. Neyens contends Congress entrusted this task to the United States Parole Commission and thus when another branch of government sets the term of imprisonment, it is a violation of the doctrine of separation of powers.

Neyens argues that the district judge sentenced him to fifteen years imprisonment on the sole ground that the judge wished to ensure that he serve a minimum of five years without opportunity for parole and that the fifteen-year sentence bears no relationship to the actual time the judge thought Neyens should serve. The record, however, does not support this contention. As has been previously discussed, the sentence imposed by the district judge is appropriate because of Neyens' leadership role in the scheme, his breach of trust with Deere, the extent of his profits, and the seriousness of his crimes.

The remaining issue is whether the district judge violated the doctrine of separation of powers by imposing a sentence that was based in part on consideration of 18 U.S.C. § 4205(a). The doctrine of separation of powers in practical application does not strictly prohibit some overlap among the three branches of government. *See* J. Nowak, R. Rotunda & J. Young, *Constitutional Law* 136–37 (1983). This is especially true in sentencing, where all branches interact to give form and substance to the myriad, and often competing, objectives of punishment. Congress prescribes a range of sentences usually limited by a maximum term of imprisonment. Within this range of sentences, the courts are free

---

**3.** The judge noted:

When you go off to prison, after you get there the parole commission will have a hearing or will go through a process where they will determine the amount of time that you will actually spend in prison before you are paroled. So any sentence that the Court imposes is somewhat misleading, at least misleading to the public.

If I sentence someone to nine years, that doesn't mean nine years. If I sentence you to twelve years or fifteen years or six years, it doesn't mean that you will actually serve that. It generally means that you will serve one-third of your sentence, and then you will serve a period beyond that as determined by the parole guidelines.

In setting the sentence in this case, I have given serious consideration to the minimum amount of time that I want to be sure you spend in prison....

    . . . .

I want to do what I can to be sure that you spend more time in prison than the other defendants in this case. Subsequently, I think it is incumbent on me to structure your sentence in such a way that I am sure that that's the result it [sic] attaches.

**4.** 18 U.S.C. 4205(a) reads:

a) Whenever confined and serving a definite term or terms of more than one year, a prisoner shall be eligible for release on parole after serving one-third of such term or terms or after serving ten years of a life sentence or of a sentence of over thirty years, except to the extent otherwise provided by law.

to impose a sentence, taking into consideration the circumstances surrounding the crime, the needs of the offender, and the goals of society. The parole commission then selects how much of that sentence the defendant ultimately will serve. *United States v. Grayson,* 438 U.S. 41, 47, 98 S.Ct. 2610, 2614, 57 L.Ed.2d 582 (1978); *Moore v. Nelson,* 611 F.2d 434, 439 (2d Cir.1979). To show a violation of the doctrine of separation of powers, Neyens must establish that the district judge was attempting to set a parole release date. *See United States v. Addonizio,* 442 U.S. 178, 189 n. 15, 99 S.Ct. 2235, 2242 n. 15, 60 L.Ed.2d 805 (1979) (trial judge precluded from determining release on parole). Thus only if the district judge's consideration of 18 U.S.C. § 4205(a) can be construed as fixing a release date can the doctrine of separation of powers be violated.

The statute considered by the district judge, 18 U.S.C. § 4205(a), has the effect of setting parole eligibility dates only, and not release dates. A district judge may properly consider eligibility in determining a sentence. *See Warden v. Marrerro,* 417 U.S. 653, 658, 94 S.Ct. 2532, 41 L.Ed.2d 383 (1974) ("parole eligibility can be properly viewed as being determined—and deliberately so—by the sentence of the district judge"). Indeed, such considerations allow the district judge to gauge the effects and likely consequences of his sentencing decisions and thereby ensure that sentences reflect the needs of the offender and the public. To say that the consideration of eligibility dates somehow also determines release is, however, an entirely different matter. Considerations of eligibility via 18 U.S.C. § 4205(a) in no way equal the setting of release dates. The Court in *Addonizio* made it clear that the "judge has no enforceable expectations with respect to actual release of a sentenced defendant short of his statutory term." *Addonizio,* 442 U.S. at 190, 99 S.Ct. at 2243. The decision as to the actual release date is still within the authority of the parole commission. *Id.* at 189–90, 99 S.Ct. at 2242–43. Thus even though the district judge may assume that Neyens will become eligible for parole in five years and even base his sentencing

decision in part on that assumption, the district judge cannot guarantee that Neyens will be released in accordance with that assumption. Neyens' argument confuses consideration of parole eligibility dates with setting of parole release dates, and is therefore misplaced.

 We conclude that when a district judge imposes a sentence within statutory parameters, within the terms of a binding plea agreement, and exercises proper discretion, the fact that the judge considers the statute governing parole eligibility does not violate the doctrine of separation of powers.

## III. CONCLUSION

Defendant fails to show any grounds that could persuade us to alter the sentence imposed by the district court. We therefore affirm the decision of the district court.

AFFIRMED