UNITED STATES of America, Plaintiff–Appellee,

v.

Pamela S. BARNETT, Defendant–Appellant.

No. 91–2309.

United States Court of Appeals, Seventh Circuit.

Submitted March 31, 1992.

Decided April 22, 1992.

John P. Schmidt, Office of the U.S. Atty., Springfield, Ill., for plaintiff-appellee.

Roger L. Rutherford, Hinshaw & Culbertson, Springfield, Ill., for defendant-appellant.

Before POSNER and EASTERBROOK, Circuit Judges, and PELL, Senior Circuit Judge.

PER CURIAM.

Pamela S. Barnett pleaded guilty to two counts of mail fraud, in violation of 18 U.S.C. § 1341. The district court sentenced Barnett to five years' probation.[1] Barnett subsequently pleaded guilty to a state charge of deceptive practices for writing a bad check. The government moved the district court to revoke Barnett's probation. The district court found that Barnett had violated the terms of her probation by committing a state crime and sentenced her to two concurrent three-year terms of imprisonment. Barnett appeals her sentence, arguing that the district court abused its discretion by failing to consider the mitigating evidence she offered at the sentencing hearing.

" 'A sentence which is within the limits established by statute under which it is imposed will not be vacated upon review unless the sentencing judge relied upon improper considerations or unreliable information in exercising his discretion or failed to exercise any discretion at all in imposing the sentence.' " *United States v. Szabo,* 854 F.2d 251, 253 (7th Cir.1988) (quoting *United States v. Harris,* 761 F.2d 394, 402–03 (7th Cir.1985)). Barnett's sentence falls within the statutory maximum of ten years. (Two counts of mail fraud at five years each. 18 U.S.C. § 1341.) Barnett does not contend that the judge relied on any improper consideration. Thus, we must determine whether the district judge failed to exercise any discretion in imposing the sentence.

Barnett called two witnesses at the sentencing hearing. Barnett's employer, Terry Braidwood, praised her work as a program secretary at St. Mary's Square Living Center. Barnett's pastor, Gerry Comstock, testified that she was a valued volunteer worker at the church. He further testified that he had counseled Barnett and that she had progressed from "a very worried, stressed person, into one that is a much more centered and calm person." Barnett exercised her right of allocution and reiterated these mitigating circumstances. In addition, she stated that she had very close ties to her daughter and granddaughter.

The court found that Braidwood's testimony established that Barnett had "some mental abilities and ... [was] not dumb." The court reasoned that Barnett's mental capability made the commission of the state crime and resultant probation violation "even more aggravating." The court further warned Barnett that after she is released from prison, she will either "do as Reverend Comstock has indicated ... that is, get [herself] in order and continue here on the path of an honorable citizen or [she will] not. One or the other. And, if not, [she will] get caught again and ... [will] be sentenced again."

This is not a case where the district court "failed to exercise any discretion at all." When initially sentencing Barnett to probation, the judge warned her that further offenses would result in imprisonment. He was entitled to carry through. The record indicates that the district court considered Barnett's evidence but found imprisonment necessary to deter her from committing future crimes. Barnett's sentence was less than a third of the maximum available to the district judge.[2] "As long as it appears that the sentencing judge is aware of the mitigating factors, and that he has considered them in good faith, the degree of weight put on those factors will seldom be questioned." *United States v. Neyens,* 831 F.2d 156, 160 (7th Cir.1987) (citation omitted).

AFFIRMED.

PELL, Circuit Judge, dissenting.

In this country there has been a cause of public discontent with sentencing of con-

---

1. Because the offenses to which Barnett pleaded guilty occurred before November 1, 1987, she was not sentenced under the federal sentencing guidelines.

2. The district judge sentenced Barnett to three years in prison on each count to run concurrently and anticipated that under the old sentencing system, which allows parole, she will serve approximately one year.

victed persons in judicial proceedings. The complaint was that two persons each convicted of essentially the same crime but appearing before different judges would receive widely disparate sentences: One to what was sometimes termed a slap on the wrist and the other to an extended period of incarceration.

At least in the federal system an effort was made to correct the situation by the imposition of sentencing guidelines. These were greeted negatively by many district judges who thought their discretion in sentencing was being made the subject of undue interference. The resistance ended when the Supreme Court of the United States upheld the sentencing guidelines.

Although Pamela Barnett did not make her first formal appearance in the federal district court until late 1988, well after the effective date of the sentencing guidelines, November 1, 1987, the offense with which she was charged occurred prior to that date. As the majority pointed out, she was not sentenced under the guidelines. Nevertheless, at no time, before or after the guidelines, was discretion in sentencing equated with substantial abandonment of discretion. Upon my reading of the record before us, it appears to me that the judge simply did not give any real consideration to the mitigating circumstances of this case. Therefore, I respectfully dissent.

The Assistant United States Attorney at the sentencing hearing made the rather interesting observation that he knew he and the court were on the same wave length, and both considered probation to be a privilege, and "we both believe there is no second bite at the apple." To me this does not seem to include consideration of mitigating circumstances. The Government attorney retreated somewhat from this flat denial of a second bite in ultimately recommending a two year sentence given "her history of psychiatric problems." Further, he recommended that she be sentenced to a prison that has some type of mental health counseling. In ancient days jail was the institution where persons with mental health problems were lodged, which seems inconsistent with a desirable modern day approach to persons afflicted with mental health problems.

The district court judge completed his observations at the sentencing as follows:

Now, it seems to me that you're either going to do it or you're not going to do it, Mrs. Barnett. I don't want to see you back here again. I told you that the first time when I granted you that probation to begin with. And I told you don't come back in here, violate that order, or you would be making a trip someplace. Now, I don't bluff. Those are the cards. And you chose not to believe. That's the sentence of this Court.

Barnett's lawyer in summarizing his position in the case on her behalf made the following recommendations and observations which I think are worth setting out in full:

I believe, Your Honor, that also Pamela is in need of continuing medical treatment and therapy. I believe that the therapy and treatments made by Dr. Paul here for her medical conditions and Dr. Reedy at the Mental Health Clinic, supplemented by Dr. Comstock's counseling and her therapy that he's been able to provide, plus a program that Pamela may have not mentioned to you, but she is in what is called a twelve-step program. She is participating in various aspects of that.

One is a function of overeaters anonymous, one is a unit of alcoholics anonymous relating to adult children of alcoholics. And Alanon, family and friends of members, of alcoholics.

I would just like for the Court to take these matters and additional factors into consideration in sentencing Pamela and ask that if the Court does see fit that some form of incarceration is essential, that perhaps it be structured or done so that she could continue to function in this community, and that she be incarcerated here in this community so that she can continue to work with Dr. Reddy, Reverend Comstock, in being able to provide the support and structure for her, and she in turn would be able to give assistance to her family and report to the

Probation Office as frequently as the Court or Probation Office may require.

I also note other observations of the district judge during the sentencing proceedings: "We have given you chances and opportunities and each time you have failed the trust and the faith that was placed in you." I can only assume that the reference to "we" includes her two state court appearances because she had only been in the federal court the one time. Turning to her own prior appearances in court, the first of these I can only guess at. In the record before us, the Government attorney referred to a conviction in state court for deceptive practices and there she was given a sentence of conditional discharge. From the context in which this appears, I assume the term deceptive practice was the issuance of an insufficient funds check because the same term was used again in his references to the second appearance in state court in April of 1990 where the record does show that a $100 check to Walmart was the basis of the state court charge which ultimately resulted in the revocation of the probation. In that case she paid a fine, court costs, and was ordered to make restitution. Obviously, she had a checking account and wrote the check for a larger amount than was in her checking account. One puts aside at this point any thoughts about the fact that this seems to have been a rather common occurrence among those at a higher echelon of this country. It appears that Barnett was aware of her mental health problems for, as she told the judge, she no longer tried to keep a checking account but only relied on a savings account.

With regard to the two state court charges, she told the judge during the sentencing proceeding that when she consulted with Alexander, presumably her attorney, "He felt that supervision was in my best interest in the case that has brought about the probation revocation today" and that she "was not made aware that the consequences which jeopardized my U.S. Probation until late April 1991, most recently." She also added she came before the court today very remorseful for her past personal actions and added, "Life is full of mis-takes which I have made my share of but life is full of solutions. It is through mistakes that you learn well." At least, she recognized that she had made mistakes and on all three occasions she entered guilty pleas.

The district judge did say, "Now, I don't doubt for a moment that you do need mental health counseling and assistance in that regard. We'll do our best to accommodate that." A search of the record failed to disclose to me any evidence of an effort for the accommodation. Instead, the judge simply stated, "You're going to spend a year in the federal slammer." It is much too likely that the counseling there will be from other inmates which might take the form of advice on how not to get caught the next time.

I have been reluctant to dissent because of the respect I have both for the sentencing judge and for my colleagues in this case who have agreed with the position the district judge took. I do not and accordingly have dissented.