19 F.3d 22
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Willie R. ROBINSON, Petitioner/Appellant,
v.
Howard A. PETERS, III and Neil F. Hartigan, Respondents/Appellees.
 No. 92-3973.
 United States Court of Appeals, Seventh Circuit.
 Submitted Feb. 16, 1994.*
Decided Feb. 23, 1994.
 
 Before CUMMINGS, KANNE and ROVNER, Circuit Judges.
 
 ORDER
 
 1
 Willie R. Robinson, an Illinois prisoner, appeals from the district court's denial of his petition for a writ of habeas corpus. 28 U.S.C. Sec. 2254. Robinson alleges that he was denied due process by the trial court's denial of his motion for severance and in sentencing, that he was denied an effective appeal by the lack of a verbatim transcript of the voir dire, and that he was denied the effective assistance of his trial and appellate counsels. After a de novo review, Lily v. Gilmore, 988 F.2d 783, 784 (7th Cir.), cert. denied, 114 S.Ct. 154 (1993), we find no constitutional error and affirm the judgment for the reasons stated by the district court.
 
 
 2
 Before the district court and this court, Robinson challenged his sentence on due process, not Eighth Amendment, grounds. See United States v. Tucker, 404 U.S. 443, 447 (1972) (due process); Harmelin v. Michigan, 111 S.Ct. 2680 (1991) (Eighth Amendment). The district court's order adequately addressed the issue raised. To the extent that Robinson challenged the state court's interpretation of Illinois sentencing laws, he cannot succeed because "it is not the province of a federal habeas court to reexamine state court determinations on state law questions." Bloyer v. Peters, 5 F.3d 1093, 1098 (7th Cir.1993). See also Stephens v. Miller, No. 91-1690, slip op. at 5 (7th Cir. Jan. 7, 1994).
 
 
 3
 With respect to Robinson's allegation that his trial counsel failed to call a potential witness, Robinson has clarified that the potential witness was Michael Jackson. Although Jackson might have undermined May's credibility if he had testified consistently with the statement in the supplemental police report, the testimony would also undermine Robinson's proffer that he did not shoot at May. Thus, this evidence is insufficient to show prejudice. Strickland v. Washington, 446 U.S. 668, 687 (1984); Lockhart v. Fretwell, 113 S.Ct. 838, 843 (1993). The evidence against Robinson was strong enough for us to conclude that trial counsel's failure to call Jackson as a witness did not render the result of Robinson's trial unfair or unreliable. Id. Accordingly, we AFFIRM the judgment for the reasons stated in the attached district court order.
 
 ATTACHMENT
 UNITED STATES DISTRICT COURT
 CENTRAL DISTRICT OF ILLINOIS
 
 4
 Nov. 10, 1992.
 
 
 5
 United States, ex rel. Willie R. Robinson, a/k/a Jon Stokes,
 
 
 6
 Petitioner,
 
 
 7
 vs.
 
 
 8
 Howard Peters, et al., Respondents.
 
 No. 89-2091
 ORDER
 
 9
 Willie Robinson, a/k/a/ Jon Stokes, is a prisoner in the Illinois Department of Corrections and has filed a petition for writ of habeas corpus under 28 U.S.C. Sec. 2254.
 
 
 10
 On May 9, 1984, Robinson was convicted by a jury of armed robbery and attempted murder in Champaign, Illinois. The trial court sentenced him to consecutive terms of 30 years for the armed robbery conviction and 15 years for attempted murder. The conviction was affirmed on direct appeal on August 15, 1985. He filed a petition for post-conviction relief that was denied on July 14, 1987. On July 14, 1988, his appeal from denial of the petition for post-conviction relief was denied.
 
 
 11
 In this petition for a writ of habeas corpus, Robinson raises five cognizable[1], constitutional claims: 1) ineffective assistance of trial counsel, 2) ineffective assistance of appellate counsel, 3) due process violation when the state trial court denied his motion to sever, 4) violation of his right to an effective appeal by lack of a verbatim transcript of voir dire, and 5) disparate sentencing in violation of the Eighth Amendment.
 
 
 12
 Robinson's ineffective assistance of trial and appellate counsel claims were procedurally defaulted and the court ordered him to show cause and prejudice for his default under Wainwright v. Sykes, 433 U.S. 72 (1977). Order of June 27, 1991 at 3. In this order, the court first will address whether Robinson has cured these procedural defaults and then the merits of the petition.
 
 Ineffective assistance of counsel
 A. Trial counsel
 
 13
 A petitioner for a writ of habeas corpus with claims on which he has procedurally defaulted must show cause for the defaults and resulting prejudice. Wainwright, 433 U.S. at 87. In his response to the court order of June 27, 1991, the petitioner states the cause for his procedural default was his trial attorney's ineffective assistance. To support this claim, Robinson asserts that trial counsel was not adequately prepared for trial and failed to call a crucial defense witness.
 
 
 14
 An attorney's conduct can constitute cause for procedural default if it is "ineffective under the standard established in Strickland v. Washington, [466 U.S. 668 (1984) ]." Murray v. Carrier, 477 U.S. 478, 488 (1986). For counsel's performance to be "cause" for the procedural default "the prisoner [must] show that some objective factor external to the defense impeded counsel's efforts to comply with the state's procedural rule." Murray, 477 U.S. at 488.
 
 
 15
 Under Strickland, to be constitutionally defective, performance of counsel must be deficient and the petitioner must show "errors so serious that counsel was not functioning as 'counsel'... [and prejudice from the deficiency] so serious as to deprive the [petitioner] of a fair trial, a trial whose result is reliable." Strickland, 466 U.S. at 687. The defendant must identify acts or omissions of counsel that are not the result of professional judgment. Id. at 690. The habeas court must review the acts or omissions in light of all the circumstances and determine whether they were outside the range of professionally competent assistance. Strickland, 466 U.S. at 690.
 
 
 16
 Robinson claims trial counsel was unprepared and ineffective; the court's reading of the transcript differs. The record reveals trial counsel was appointed in Robinson's case 37 days before trial was scheduled to begin. Counsel requested a continuance for time to prepare the case and to accommodate the schedule of his law clerk. The judge denied this motion and the trial was conducted as scheduled. Although he requested a continuance, it appears from the record that counsel was amply prepared to defend Robinson's case. He cross-examined virtually all the state's witnesses, revealed several prior inconsistent statements, made timely objections, preserved issues for appeal, offered proof of petitioner's testimony and advanced cogent arguments. From the record and in light of all the circumstances, it appears to the court that the petitioner's trial counsel actively defended his case.
 
 
 17
 Alternatively, Robinson states trial counsel "failed to discover and call a defense witness" and therefore was ineffective. Reply Brief of Petitioner at 5. Failure to call the only disinterested alibi witness has been found to be ineffective assistance of counsel and grounds to grant the writ. See Montgomery v. Petersen, 846 F.2d 407 (7th Cir.1988). In Montgomery, the petitioner was tried on two separate counts of burglary. He was acquitted in one county, but convicted in the other. The only difference between the two trials was that the disinterested alibi witness testified at the first trial but counsel at the second did not call that witness. Id. at 411. The Seventh Circuit held that under the particular facts and circumstances, trial counsel's failure to investigate the only disinterested witness amounted to ineffective assistance of counsel.
 
 
 18
 Neither the petition nor the record reveals who would have been the defense witness. At trial, Robinson made an offer of proof of what his own testimony would have been. Robinson said he spent the evening of the robbery with the co-defendant Coleman and "Legs", an acquaintance of Coleman's. Presumably Legs was the witness whom Robinson believes his attorney should have called. There is no evidence in the record, however, that the petitioner asked to have this person testify. Moreover, as the court reads the transcript, the offer of proof illustrated inconsistencies between the petitioner and Coleman's testimony and renewed the motion to sever. Record at 366-370. The testimony was not offered to prove what Legs would have said as a defense witness.
 
 
 19
 As Robinson has made no showing of what information the missing witness would have supplied, United States ex re. Partee v. Lane, 926 F.2d 694 (7th Cir.1991), cert. denied, --- U.S. ----, 112 S.Ct. 1230 (1992), he has failed to establish cause for his procedural default. The court finds his attorney's conduct at trial was not outside the range of professionally competent assistance and does not establish cause for Robinson's procedural default.
 
 B. Appellate counsel
 
 20
 The Due Process Clause of the Fourteenth Amendment guarantees a criminal defendant the right to effective assistance of counsel on the first appeal as of right. Evitts v. Lucey, 469 U.S. 387, 396 (1985). A petitioner must present a claim of ineffective assistance of appellate counsel as an independent claim. Murray, 477 U.S. at 488. As with the ineffective assistance of trial counsel claim, the court ordered Robinson to establish "cause" and "prejudice" under Wainwright for the default. Order of June 27, 1991 at 3-4.
 
 
 21
 In his response to the court's order, Robinson stated, as he did with his claim of ineffective assistance of trial counsel, that the appellate counsel's ineffectiveness caused his procedural default. Strickland provides the standard by which to gauge whether ineffective assistance of appellate counsel caused a procedural default. Murray, 477 U.S. at 492. This requires a showing of "some external impediment preventing counsel from constructing or raising the claim." Id.
 
 
 22
 Robinson stated his appellate counsel was constitutionally ineffective because he did not raise certain issues, namely, ineffective assistance of trial counsel, failure of trial counsel to call a crucial witness and failure to present the claim of sentencing as based on inaccurate information. On direct appeal, Robinson's appellate attorney did raise three points: 1) denial of the motion to sever was an abuse of discretion; 2) disparate sentencing of the co-defendants was an abuse of discretion; and 3) lack of a verbatim transcript of voir dire denied him the right to an effective appeal.
 
 
 23
 Appellate counsel's choice of issues for appeal must not fall below the Strickland objective standard of reasonableness. Gray, 800 F.2d 644, 647 (7th Cir.1986). It appears that Robinson disagreed with appellate counsel as to what were the strongest issues. However, appellate counsel is not required to raise every conceivable argument on appeal, Id. at 646, and failure to raise a claim does not constitute cause for a procedural default. Murray, 477 U.S. at 486.[2]
 
 
 24
 The Seventh Circuit has provided the following guidance to district courts in this area:
 
 
 25
 When a claim of ineffective assistance of counsel is based on failure to raise viable issues, the district court must examine the trial court record to determine whether appellate counsel failed to present significant and obvious issues on appeal. Significant issues which could have been raised should then be compared to those which were raised. Generally, only when ignored issues are clearly stronger than those present, will the presumption of effective assistance of counsel be overcome.
 
 
 26
 Gray, 800 F.2d at 646.
 
 
 27
 After reviewing the entire record, the court concludes that appellate counsel's choice of issues on appeal were reasonable and as strong as the others. The court finds that appellate counsel could have chosen to forego the issue of ineffective assistance of trial counsel given the high standard of Strickland. The court noted in the preceding section trial counsel's interaction and attentiveness throughout the trial. The court cannot say that the omitted issue was "clearly stronger" than the others that were presented.
 
 
 28
 Robinson also claims appellate counsel was deficient for not presenting the issue of failure to call a crucial witness. The record on this claim is equivocal and, at best, sparse. This was not a "clearly stronger" issue for direct appeal.
 
 
 29
 Lastly, the petitioner claims the appellate counsel was ineffective for presenting his disparate sentencing claim as an abuse of discretion, rather than based on improper information. Either theory could have been grounds for appeal and reversal. See e.g. U.S. v. Ely, 719 F.2d 902, 906 (7th Cir.1983), cert. denied, 465 U.S. 1037 (1984) (reviewing court may not change a sentence within statutory limits unless the trial court relied on improper information or failed to exercise its discretion). The court cannot say that framing that issue one way instead of the other amounted to ignoring a clearly stronger claim. Robinson has not shown cause for his procedural default of this claim.
 
 C. Fundamental miscarriage of justice
 
 30
 In an extraordinary case, the federal habeas court may grant a writ in the absence of a showing of cause for procedural default if it appears the constitutional violation has resulted in the conviction of a person who is actually innocent. Murray, 477 U.S. at 496. This exception applies when adherence to the cause and prejudice test will result in a fundamental miscarriage of justice. Smith v. Murray, 477 U.S. 527, 537-38 (1986). Under this exception, the "federal court ... may set aside the cause-and-prejudice test and permit a habeas petition if, due to a fundamentally unjust trial, an innocent defendant was convicted." Buelow v. Dickey, 847 F.2d 420, 427 (7th Cir.1988), cert. denied, 489 U.S. 1032 (1989).
 
 
 31
 From its review of the record, the court concludes that the assistance of trial and appellate counsel did not result in a fundamental miscarriage of justice. The court finds that trial counsel was not deficient in his representation of Robinson and Robinson received a fundamentally fair trial. Although the petitioner disagrees with appellate counsel's choice of issues, those chosen were reasonable, well presented and the choice did not result in a fundamental miscarriage of justice. Robinson has failed to establish cause and prejudice for both the ineffective assistance of counsel claims and they are dismissed as procedurally defaulted.
 
 Failure to grant motion to sever
 
 32
 Several times before trial began, during it and after the verdict was returned, Robinson moved to have his trial severed from his co-defendant's. The trial court denied each of these requests, finding that Robinson's and Coleman's defenses were possibly inconsistent but not so antagonistic as to require severance.
 
 
 33
 There is a strong interest in joint trials from a common enterprise as they reduce judicial and administrative expenses, lessen burdens on witnesses and give the jury a perspective of all the evidence in a case. United States v. Buljubasic, 808 F.2d 1260, 1263 (7th Cir.), cert. denied, 484 U.S. 814 (1987). It is not necessary to hold separate trials "[u]nless the defenses are so inconsistent that the making of a defense by one party will lead to an unjustifiable inference of another's guilt, or unless acceptance of a defense precludes acquittal of other defendants". Id. (emphasis in the original). A refusal to grant a severance is reviewable only for abuse of discretion. United States v. Bruun, 809 F.2d 397, 407 (7th Cir.1987). When compared to the State's evidence, Robinson's and his co-defendant's positions were inconsistent and incredible, but not antagonistic.
 
 
 34
 The state presented fourteen witnesses: several were IGA employees who were working on the night of the robbery, occurrence witnesses and arresting and investigative police. One worker, Steve Marshky, testified he was outside the store collecting shopping carts and noticed two black men enter the store. One was wearing a blue bandanna and sunglasses. R. at 164. As he headed toward the store, Marshky heard yelling and saw the man with the bandanna on top of the register. R. at 166. In court, Marshky identified both defendants as the men he saw enter the IGA. R. at 168.
 
 
 35
 The night manager, Hans Milsap, testified a black man, wearing a blue bandanna and sunglasses, jumped on top of the register and told everyone in the store to get on the floor. R. at 184. He was brandishing a gun. Id. Another black man was at the front counter, also with a gun. R. at 185. Milsap also made an in-court identification of both defendants. R. at 186-87.
 
 
 36
 Kathy Earl was working at the front counter and identified Robinson as the person who ordered her and another worker to put money and cash register drawers into a plastic bag. R. at 198, 202. Kim Roney was the other worker in the front office. She testified that the man jumped into the office and put more money into the bag. R. at 213. She did not make an in-court identification of either defendant.
 
 
 37
 The checker, Jill Coats, testified a black man jumped on top of her counter, holding a gun, and told everyone to lie on the ground. R. at 220. She identified a jacket that looked like the one the man on the counter wore. Id.
 
 
 38
 Steve May testified that he was driving through the parking lot near the IGA and noticed two men behind a parked car. R. at 226. He thought they were tampering with the car and shouted at them to stop. Id. A black man wearing a bandanna jumped from behind a car and yelled, "You are dead, mother fucker," and fired a shot at May. R. at 227. The other man ran away and dropped a bag. To frighten the men, May told them to stop because he had a gun and was going to shoot. Another shot was fired at May, but he did not see who fired it. R. at 227. He testified both men ran in the direction of a nearby shed. R. at 228.
 
 
 39
 Several police officers who responded to the call at the IGA testified they found a bag with the cash register drawers in the parking lot. Police found Robinson and Coleman in a nearby shed. Both had guns. A shoe print was taken from the cash register counter and positively identified as made by the shoes Coleman was wearing when the police found him that night.
 
 
 40
 Coleman presented a different version of the events. R. at 343-357. He testified that on the evening of the robbery, he met Robinson at a bar in Decatur and they drove to Champaign in a borrowed car. In Champaign, they played video games and stopped at the IGA to make a telephone call. Coleman said he was wearing a blue and white bandanna on his head as he always did. After they left the IGA, they saw two men, one of whom was wearing a bandanna, taking off their clothing and dropping things on the ground. Coleman said he saw the men in a conflict with a person in a pick-up truck and then heard a gun shot. The men took off running, and the truck followed them. Coleman testified that he removed his coat and tried on the one the stranger had discarded. He and Robinson also found that the men had dropped cash register drawers filled with money and were about to put the money into their trunk when the man in the pick-up truck returned and shouted at Coleman and Robinson. They became scared and ran away. Coleman testified that he found a .45 caliber pistol in the new coat pocket and gave it to Robinson. In their fright, Coleman and Robinson ran to a nearby shed and were hiding from the man in the truck when the police came and arrested them.
 
 
 41
 Robinson did not testify but made an offer of proof of his testimony. R. at 366-69. He would have testified that on the evening of the robbery he met Coleman and Legs at a bar in Champaign. On the way back to Decatur, the trio stopped to eat near the IGA. Legs and Coleman got out of the car, but Robinson remained in it. Fifteen minutes later, Robinson heard shouting and gun shots. He got out of the car and saw a man hunched over in his pick-up truck and Coleman running across a field. Afraid and unaware of what was occurring, Robinson ran in Coleman's direction and hid in a shed with Coleman and Legs. Legs left before the police arrived. On the way to the shed, Robinson picked up a stocking cap he thought Coleman had dropped, in which he found the .45 caliber pistol. Robinson could not account for the fifteen minutes between Coleman's leaving the car and the gun shots, but would not have testified that Legs or Coleman went near the IGA.
 
 
 42
 Robinson and Coleman asserted widely different stories of what occurred that evening. Each claims that neither of them committed the robbery and both claim they are victims of mistaken identity. While a jury might have thought both stories were fantastic, neither defendant's story leads to an unjustifiable inference of the other's guilt; nor does acceptance of one defense preclude acquittal of the other. Buljubasic, 808 F.2d at 1263. The renditions are inconsistent but they are not antagonistic, and the trial court did not abuse its discretion when it denied the motion to sever. The court must deny Robinson's due process claim.
 
 Lack of verbatim transcript of voir dire
 
 43
 Robinson claims that the lack of a verbatim transcript of voir dire denied him an effective appeal and violated his right to due process. Before the trial began, the defendant moved for a mistrial based on issues raised during voir dire regarding potential bias from one member of the venire and the judge's restrictions on Robinson's questions to the second panel. The defendant did not request a verbatim transcript of voir dire. However, the judge, the prosecutor and both defendants stated on the record their recollections of what occurred during voir dire. The petitioner's attempt to establish a bystander report during appeal was unsuccessful and did not reveal more details than the trial transcript. Robinson pursued these issues on appeal in state court from the transcript. Thus, the record of the objection (R. at 144-152) is the most comprehensive evidence of what occurred during jury selection.
 
 
 44
 The state cannot deny an indigent defendant a transcript with which to take an appeal. Griffin v. Illinois, 351 U.S. 12 (1956). The court has found no Seventh Circuit case that has addressed whether absence of a portion of the trial transcript denies a defendant the right to a fair appeal. However, three other circuits have examined this issue and have found no per se violation of a fair appeal if a portion of the transcript is missing. Bransford v. Brown, 806 F.2d 83, 86 (6th Cir.1986), cert. denied, 481 U.S. 1056 (1987); Mitchell v. Wyrick, 698 F.2d 940, 941 (8th Cir.), cert. denied, 462 U.S. 1135 (1983); White v. State of Fla. Dept. of Corrections, 939 F.2d 912, 914 (11th Cir.1991), cert. denied, --- U.S. ----, 112 S.Ct. 1274 (1992). These courts have held that to demonstrate denial of a fair appeal, the habeas petitioner must show prejudice resulting from the missing transcripts. Bransford, 806 F.2d at 86; Mitchell, 698 F.2d at 942. The petitioner must present something more than gross speculation that the transcripts were requisite to a fair appeal. Bransford, 806 F.2d at 86. To rise to the level of a constitutional violation, the missing portion of the voir dire transcript must have prejudiced Robinson's appeal.
 
 
 45
 On the record, the defendant objected to a statement of a potential juror who, when asked if he knew anyone on the list of witnesses, said he knew May. The defendant claimed the person's statement would cause the jury unnecessarily to believe May's testimony. The record reveals this potential juror immediately was discharged for cause. The judge declined to give a cautionary instruction to the jury so as not to draw more attention to the incident.
 
 
 46
 Again, on the record the trial judge said his voir dire notes indicated the potential juror said, "I have worked with [the witness] for five years, and I would be inclined to believe him." R. at 145-46. The prosecutor concurred with that statement. The petitioner stated he recalled the juror making a more extensive statement, to the effect that the juror would be inclined to believe the witness. R. at 146. Coleman said he had no clear recollection of what was said but thought the potential juror said one, emphatic sentence. R. at 147. None of these renditions differs significantly from the trial court's notes. The judge denied the petitioner's motion for a mistrial on the grounds that the statement would have minimal prejudice on the panel.
 
 
 47
 The petitioner's other objection, that he was not allowed to question the second panel individually on the petitioner's Fifth Amendment rights, was also reconstructed on the record. The colloquy on the record after voir dire reveals that the petitioner asked the first panel members if they could accept a defendant's right not to testify. At that point, the judge interrupted and instructed the entire jury on the defendant's Fifth Amendment rights. R. at 150. When the petitioner later attempted to present the same question individually to members of the second panel, the prosecution raised an objection. R. at 151-152. All members of the second panel were in the jury box when the court had given its extensive statement about the defendant's rights and the court sustained the objection. R. at 152.
 
 
 48
 Robinson has not shown that the transcript of this portion of jury selection was necessary for appeal. The discussion between the trial court and counsel occurred very soon after the incidents during voir dire. Although the defendant said he thought the prospective juror's statement was more extensive than what the judge quoted, he did not recount any specific statement that causes this court to question the accuracy of the trial judge's notes. The court believes the record adequately reconstructed the incidents during jury selection and gave the petitioner an adequate opportunity to present a fair appeal of those issues.
 
 
 49
 Even assuming the petitioner's rendition of the prospective juror's statement is true, that the man said something more extensive and emphatic than, "I worked with him for five years and I would be inclined to believe him," it is mere speculation that this statement biased the entire jury. Bransford, 806 F.2d 86. The court also finds the single statement by a potential juror who was then discharged did not affect the impartiality of the venire.
 
 
 50
 Similarly, the record does not raise questions of jury partiality regarding the defendant's privilege against self-incrimination. The trial court stated it explained at length to the entire panel that the defendant has the absolute right not to testify. The trial court found the jury was impartial and adequately apprised of the defendant's Fifth Amendment rights. Again, when the parties were back on the record, if the trial court's rendition was inaccurate, the defendant did not preserve the record because there is nothing that contradicts the judge's finding. The court finds no impropriety in advising the entire panel rather than individual jurors of the defendant's Fifth Amendment rights. The court finds no prejudice to the petitioner from the missing portion of the transcript that he failed to request and the court must deny this due process claim.
 
 Disparate sentencing
 
 51
 Although the prosecutor did not request consecutive terms, the trial judge sentenced Robinson to thirty years for the armed robbery conviction and fifteen years for attempted murder, with the terms to run consecutively. Coleman received thirty years on each charge, to run concurrently. Robinson claims the disparate sentencing violates the Eighth Amendment because the co-defendants were similarly situated and had equal participation in the crime.
 
 
 52
 The Illinois criminal code in effect when Robinson was sentenced, Ill.Rev.Stat. ch. 38, para. 1005-8-4 (1981), provided for consecutive sentencing:
 
 
 53
 Sec. 5-8-4(a) Concurrent and Consecutive Terms of Imprisonment.... The court shall not impose consecutive sentences for offenses which were committed as part of a single course of conduct during which there was no substantial change in the nature of the criminal objective, unless, one of the offenses for which the defendant was convicted was a Class X or Class 1 felony and the defendant inflicted severe bodily injury, in which event the court may enter sentences to run consecutively....
 
 
 54
 (b) The court shall not impose a consecutive sentence unless, having regard to the nature and circumstances of the offense and the history and character of the defendant, it is of the opinion that such a term is required to protect the public from further criminal conduct by the defendant, the basis for which the court shall set forth in the record.
 
 
 55
 The record reveals that Robinson's criminal background was more extensive than Coleman's. He had been convicted of four felonies and two juvenile offenses. While a juvenile, he violated the terms of his probation twice. Supplement at C 130. Coleman had a juvenile offense, one felony conviction and two misdemeanor convictions. Supplement at C 120-21.
 
 
 56
 As noted earlier, a reviewing court may not change a sentence that is within statutory limits on the ground that the sentence was too severe unless the trial court relied on improper information or failed to exercise its discretion at all in imposing the sentence. Ely, 719 F.2d at 906. Disparity of sentences between co-defendants alone will not make out a claim of improper exercise of the court's discretion. U.S. v. Neyens, 831 F.2d 156, 159 (7th Cir.1987). There is no evidence the trial judge relied upon improper information. Equality of sentences between co-defendants requires only that the trial court give "thoughtful consideration to the sentences which [it] imposes." Id. (citation omitted).
 
 
 57
 The trial court found section (a) inapplicable and considered consecutive sentences under section (b). The judge made extensive findings on the record about why he imposed consecutive terms on Robinson: the petitioner had an extensive criminal history and numerous felony convictions; the current offenses were very serious; the public was threatened by an armed robbery at a grocery store; the petitioner was older than his co-defendant; and the court believed Robinson had low potential for rehabilitation. R. at 460. The court further found that the public needed to be protected from Robinson. R. at 461-63.
 
 
 58
 Assuming the petitioner and his co-defendant were equally culpable, they had different criminal histories and were not similarly situated. Consecutive sentences are permitted under Illinois law and the court finds no abuse of discretion in the disparate sentences. The court must deny this Eighth Amendment claim.
 
 CONCLUSION
 
 59
 The petitioner Robinson has not shown cause for the procedural default of his claims of ineffective assistance of trial and appellate counsel. These claims are dismissed as procedurally defaulted. A review of the merits of the remaining claims does not establish any constitutional violations. The court denies the remaining claims.
 
 
 60
 IT IS THEREFORE ORDERED that Robinson's petition for a writ of habeas corpus (docket # 1) is denied.
 
 
 61
 ----------/s/ Harold A. Baker
 
 
 62
 ----------HAROLD A. BAKER.
 
 
 63
 ----------United States District Judge
 
 
 
 *
 After preliminary examination of the briefs, the court notified the parties that it had tentatively concluded that oral argument would not be helpful to the court in this case. The notice provided that any party might file a "Statement as to Need of Oral Argument." See Fed.R.App.P. 34(a); Cir.R. 34(f). No such statement having been filed, the appeal is submitted on the briefs and record
 
 
 [1]
 Robinson originally presented a sixth claim of ineffective assistance of counsel during his petition for post-conviction relief. The court has previously dismissed this claim as incognizable on habeas review because there is no constitutional right to counsel at a post-conviction proceeding. Order of June 27, 1991 at 5-6. Petitioner, however, attempted to show cause and prejudice for this claim in his response to that order. The court will not address Robinson's cause and prejudice argument for the claim of ineffective assistance of post-conviction counsel as it has been dismissed and re-iterates that ineffective assistance of counsel at a post-conviction proceeding cannot form a basis for a constitutional violation as there is no right to counsel on collateral appeal
 
 
 [2]
 As a matter of constitutional law, a defendant does not have the right to have appellate counsel raise every non-frivolous issue that the defendant requests. Jones v. Barnes, 463 U.S. 745, 754 n. 7 (1983.) Jones specifically left open the question whether counsel's failure to raise requested claims constitutes "cause" for a petitioner's procedural default within the meaning of Wainwright. Id. Justice Blackmun, concurring, stated his view that "counsel's failure to raise on appeal non-frivolous constitutional claims upon which his client has insisted must constitute 'cause and prejudice' for any resulting procedural default under state law." Jones, 463 U.S. at 755 (Blackmun, J., concurring). A majority of the Supreme Court has not adopted this point of view in subsequent cases