**Lloyd MATHEWS, Petitioner,**

v.

**IMMIGRATION AND NATURALIZATION SERVICE, Respondent.**

**Civ. A. No. 00–12260–RBC[1].**

United States District Court,
D. Massachusetts.

Oct. 25, 2001.

---

**1.** This case has been referred to the undersigned for all purposes pursuant to 28 U.S.C. § 636(c). *See* Notice of Case Assignment (# 9).

Frank Crowley, Immigration & Naturalization, Special Assistant U.S. Attorney, Boston, MA, for respondent.

Lloyd Mathews, So. Walpole, MA, pro se.

## MEMORANDUM AND ORDER ON RESPONDENT'S MOTION TO DISMISS (# 4)

COLLINGS, Chief United States Magistrate Judge.

Petitioner Lloyd Mathews ("Mathews" or the "Petitioner") has filed a petition pursuant to 28 U.S.C. § 2241 for a Writ of Habeas Corpus and has moved that this Court appoint counsel for him. The Immigration and Naturalization Service (the "INS" or "Respondent") has moved to dismiss Petitioner's petition. For the reasons stated below, the Court allows Respondent's Motion to Dismiss.

### I. FACTUAL AND PROCEDURAL BACKGROUND [2]

On February 10, 1975, Petitioner, a native of Trinidad and Tobago, was admitted to the United States as an alien lawfully admitted for permanent residence. On June 2, 1987, Petitioner was convicted in Dorchester District Court of unlawful possession with intent to manufacture, distrib-

---

2. The facts and procedural history are taken from Respondent's Memorandum in Support of its Motion to Dismiss (# 5) (unless otherwise noted) and are accepted as true. Petitioner's petition contained very little factual or procedural background and thus the court's only record of the background of this case comes from the memorandum in support of the motion to dismiss.

ute, dispense or cultivate marijuana (hereinafter, the "drug-related conviction"). On August 20, 1987, Petitioner was convicted in Suffolk County Superior Court of Rape of a Child Under 16 years of age by Force and Indecent Assault and Battery (hereinafter, the "sex-related offense convictions"). Petitioner was sentenced to 12 to 20 years for the Rape conviction and 4 to 5 years concurrent on the Indecent Assault and Battery Charge, and he is now still serving those sentences in state prison.

On January 4, 1989, an Order to Show Cause issued alleging Petitioner's deportability and on January 31, 1991, the Immigration Judge ruled that Petitioner had abandoned all applications for relief and ordered that Petitioner be deported to Trinidad. The basis of the deportation was former section 241(a) of the Immigration and Nationality Act ("INA") which provided for deportation of aliens convicted of certain controlled substance offenses. Petitioner appealed the January, 1991 deportation order to the Board of Immigration Appeals ("BIA") and on November 7, 1991, the BIA remanded the case for consideration of the merits of Petitioner's application for relief pursuant to INA section 212(c). That section provides for discretionary relief from deportation in certain cases.

On February 10, 1994, after an evidentiary hearing, the Immigration Judge denied on the merits Petitioner's application for relief under section 212(c). Petitioner appealed and by decision dated January 18, 1995, the BIA dismissed the appeal, concluding that the Immigration Judge's decision was correct.

On July 7, 1995, the Dorchester District Court vacated Petitioner's drug-related conviction, and on December 10, 1996, Pe-

titioner filed a motion to reopen his deportation case at the BIA. On December 10, 1998, the BIA reopened and remanded the case to the Immigration Judge for the entry of a new decision.

On January 7, 1999, the INS filed additional charges of deportability, alleging that the Petitioner was convicted on August 20, 1987 of the sex-related offenses, discussed above. The INS alleged that these convictions constituted bases of deportability under former 8 U.S.C. § 1251(a)(2)(A)(iii) as aggravated felonies. At the hearing, held on April 5, 1999, Petitioner admitted the sex-related offense convictions and was found by the Immigration Judge to be deportable. At the time of the 1999 deportation hearing, Petitioner had already served over 11½ years in state prison for the sex-related offenses, and thus the Immigration Judge found that Petitioner was statutorily ineligible for relief from deportation under INA section 212(c). Section 212(c) disqualifies from relief those aliens who have served five or more years of an aggravated felony conviction. Accordingly, at the April 5, 1999 hearing, the Immigration Judge pretermitted[3] Petitioner's application for relief. Simply put, Petitioner was found not to be entitled to section 212(c) relief due to the fact that he had served more than five years on aggravated felony convictions.

Although the April 5, 1999 hearing was held in Boston, Petitioner appeared by televideo conferencing from MCI, Cedar Junction. (# 17, p. 176) Also present at MCI, Cedar Junction and appearing by televideo conferencing was INS' liaison with the Massachusetts Department of Corrections, one Jack Konowitz. (# 17, p. 176) At the conclusion of the hearing, the

---

**3.** "Pretermit" means "to let pass without mention or notice." Webster's New Collegi- ate Dictionary (1976) at p. 912.

Immigration Judge issued an Order of the Immigration Judge (# 5, Exh. B). In the Certificate of Service to the Order, she indicated that the Order would be served personally upon the Petitioner by the "custodial officer." The transcript of the hearing makes plain that the "custodial officer" is Mr. Konowitz; the statement by the Immigration Judge on the record to Petitioner is "I will send you the order, sir, and Mr. Konowitz will give it to you...". (# 17, p. 211)

On April 5, 1999, Petitioner filed a notice of appeal and a request for a transcript of the Immigration Judge's ruling. (Verified Opposition to Motion to Dismiss # 16 p. 2) In May of 1999, Petitioner received a transcript of the April 5, 1999 hearing, but the transcript did not include the portion of the hearing in which the Immigration Judge issued her oral decision. (# 16, p. 7 and Ex. A) [4] After receiving the incomplete transcript, Petitioner wrote to the BIA, and then filed a motion with the BIA, asking that the BIA send him the complete transcript of the April 5, 1999 hearing. (# 16, p. 8) In response to the Petitioner's motion, the BIA sent him another copy of the April 5, 1999 hearing transcript which did not contain a transcription of the Immigration Judge's oral decision. (# 16, p. 9) In August, 1999, Petitioner filed a second motion requesting a copy of the complete transcript of the April 5, 1999 hearing. (*Id.*) The BIA did not respond to this motion. (# 16, p. 10) In October, 1999, Petitioner wrote to the BIA explaining his dilemma, but he used the wrong case number to refer to his case. (*Id.*) Eight months later, the BIA wrote to Petitioner stating that it had no case which corresponded with the case number used by Petitioner in his letter. (# 16, p. 11)

Meanwhile, by decision dated December 20, 1999, the BIA dismissed Petitioner's appeal, finding that Petitioner was ineligible for Section 212(c) relief because he had served five or more years on an aggravated felony conviction.[5] Petitioner sought judicial review of the BIA deportation order in the First Circuit Court of Appeals. *Mathews v. INS*, No. 00–1195 (1 Cir. Aug. 30, 2000). The First Circuit held that it lacked subject-matter jurisdiction over the case but noted that Petitioner's substantive claims were unpersuasive and that he had suffered no prejudice.[6]

Petitioner then filed the instant Petition for a Writ of Habeas Corpus (# 3) seeking relief from the deportation order on the grounds that he was "wrongfully found to have violated controlled substance laws when, in fact, the conviction was dismissed." (# 3 at p. 2.) He further alleged that "due to failure of Immigration Judge to provide rulings, appeal could not be filed." (*Id.* at p. 3)

---

**4.** It appears that for some reason when an Immigration Judge makes an oral decision, that decision is transcribed separately from the rest of the hearing. *See, e.g.,* # 16, Ex. G (transcript of oral decision of Immigration Judge in February, 1994 hearing, *In the Matter of Lloyd Mathews)*

**5.** The BIA's December 20, 1999 Order is confusing because the heading states "Convicted of controlled substance violation" whereas the text of the order makes reference to 8 U.S.C. §§ 1101(a)(43)(A) and (F), statutes dealing with sex-related crimes. However, it is obvious from the text of the order that the BIA was dismissing the appeal on the grounds that Mathews had served more than 5 years on his convictions for the sex-related offenses, not the drug conviction.

**6.** The First Circuit also noted incorrectly that "presumably, the IJ's oral ruling was contained within this transcript record." (# 5, Attach.A) Moreover, the First Circuit's decision is somewhat confusing because it states that Mathews was convicted of a controlled substance offense (as well as an aggravated felony); it does not seem to take into account that the drug related conviction was vacated.

The Respondent moved to dismiss the Petition for Writ of Habeas Corpus on the grounds that it fails to state a claim for which relief may be granted. (# 4). The basis of Respondent's Motion to Dismiss is that the Petitioner in the instant action raised claims that have already been rejected by the First Circuit Court of Appeals. (*See generally* # 5). The Petitioner, in the form of a motion to stay action on the motion to dismiss, requested that this Court grant him an extension of time for responding to the Respondent's Motion to Dismiss and requested that the Court appoint counsel for him. (# 6). In an order dated May 8, 2001, this Court denied the Petitioner's request for appointment of counsel and allowed the motion to stay to the extent that the Petitioner was granted leave to file and serve a memorandum of law in opposition to the motion to dismiss on or before Monday, June 18, 2001.(# 11).

On June 21, 2001, the Petitioner filed a motion for additional time to file response to the motion to dismiss. (# 12). On or about June 21, 2001, this Court granted the Petitioner leave to file a response to the motion to dismiss by August 6, 2001. On July 30, 2001, the Petitioner filed another motion for additional time within which to respond to the motion to dismiss (# 14) and on or about July 30, 2001, this Court again granted the Petitioner's motion, giving him until August 31, 2001 to respond to the motion to dismiss. On or about September 6, 2001, the Petitioner filed yet another motion for additional time within which to respond to the motion to dismiss (# 15) and on or about September 6, 2001, this Court again granted the Petitioner's motion, giving him until September 25, 2001 to respond to the motion to dismiss.

On or about September 18, 2001, Petitioner filed a Verified Opposition to Motion to Dismiss (# 16). In his opposition to the motion to dismiss, the gist of Petitioner's arguments seem to have changed somewhat. Therein, he argues that: (1) he never received a copy of the Immigration Judge's oral decision and was thus precluded from properly preparing his appeal, and (2) he was prejudiced by not receiving a transcript of the Immigration Judge's oral decision because had he received it, he would have argued on appeal that his sex-related offense convictions were handed down in 1987, prior to the 1988 and 1996 laws characterizing his crimes as aggravated felonies and that the new laws cannot be applied to him retroactively. The Respondent's Motion to Dismiss is now ripe for determination.

## II.   ANALYSIS

While the procedural history of this case is convoluted and confusing, ultimately, the Court finds that the Petition has no merit. Petitioner originally based the Petition on two grounds: (1) that the deportation order was based on a drug conviction which had been vacated, and (2) that he was unable to appeal the Immigration Judge's ruling because he never received a copy of that judge's rulings. However, in his Verified Opposition to Motion to Dismiss, Petitioner argues that in fact he did receive a partial transcript hearing before the Immigration Judge but that he never received the portion containing a transcription of the Immigration's Judge's actual oral decision. (# 16, p. 5) He further argues that the BIA based its decision to affirm the Immigration's Judge's ruling on Petitioner's vacated drug conviction, not on his sex-related offense convictions. Finally, he argues that he suffered prejudice by not receiving a copy of the Immigration Judge's oral decision because had he received it, he would have argued on appeal that because his sex-related offense convictions were obtained in 1987, prior to the 1988 and 1996 laws characterizing his

crimes as aggravated felonies, those laws cannot be applied to him retroactively. Unfortunately, all of Petitioner's arguments must fail.

■ First, although Petitioner's deportation was originally based on his drug conviction, a conviction that was eventually vacated, the deportation order subsequently was based on Petitioner's sex-related offense convictions, convictions for which he had served over 11 years at the time of the Immigration Judge's ruling. Under INA section 212(c), 8 U.S.C. § 1182(c) [7], Petitioner was not entitled to relief from the deportation order because he has served five or more years on an aggravated felony conviction. That statute set out, in relevant part, that at the Attorney General's discretion, a lawfully admitted alien may be granted relief from deportation but that such relief "shall not apply to an alien who has been convicted of one or more aggravated felonies and has served for such felony or felonies a term of imprisonment of at least 5 years." 8 U.S.C. § 1182(c). *See also Mattis v. Reno,* 212 F.3d 31, 32 n. 1 (1 Cir. 2000)("Prior to 1996, § 212(c) relief was available for an alien who was deportable because of an aggravated felony conviction as long as the alien had served less than five years in prison for the conviction."). Thus, Petitioner's assertion that the deportation order was based on a vacated conviction is simply wrong. Indeed, despite Petitioner's arguments to the contrary, the drug-related conviction has no bearing on this case at all. The deportation order was based on the sex-related offense convictions, not the drug-related conviction.

The Court admits that without a copy of the Immigration Judge's oral ruling, it may have been somewhat difficult for Petitioner to understand what her ruling was based upon. However, notwithstanding some confusion, the Petitioner was present at his deportation hearing; he was thus able to hear what the Immigration Judge's ruling was. Moreover, from all that appears, Petitioner did receive a copy of the Immigration Judge's summary order which was to be delivered to him at the prison by Officer Konowitz. *See, supra,* at p. 5. There is nothing in the record indicating that the summary order was not delivered to him in the usual course of business as described by the Immigration Judge. *See,* # 17 at p. 211. The Petitioner does not deny receiving it; what he denies receiving is the Judge's oral ruling delivered at the hearing. *See,* # 17 at p. 210.

The summary order clearly states that the Immigration Judge was pretermitting Petitioner's request for relief, "not under AEDPA, but because [Petitioner] served 5 years or more on an aggravated felony . . . ." (# 5, Attach.B). The summary order also refers to sections 101(a)(43)(A) and 101(a)(43)(F) of the Immigration and Nationality Act. These sections deal with aggravated felonies, including rape and sexual abuse; they have nothing to do with drug-related offenses. Petitioner therefore should have had a solid understanding of the Immigration Judge's ruling and should have known that it was based upon Petitioner's sex-related offense convictions, not on his vacated drug-related conviction. Thus, Petitioner has not put forth any legitimate argument that the deportation order was unlawfully entered.

■ Second, Petitioner's argument that he never received a copy of the transcript of the Immigration Judge's oral ruling is unavailing. Even if Petitioner did not re-

---

**7.** As it existed prior to the 1996 amendments wrought by AEDPA and the section's ultimate repeal by section 304(b) of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996.

ceive a copy of the Immigration Judge's oral ruling, however, under the relevant regulations, all that Petitioner is entitled to is the summary order, not a full transcript of the Immigration Judge's oral ruling. *See* 8 C.F.R. § 240.13(b) and (c)("An oral decision shall be stated by the immigration judge in the presence of the [parties]. . . . When the immigration judge renders a summary decision. . . , he or she shall serve a copy thereof upon [the parties] at the conclusion of the hearing.").

■ Even if Petitioner were entitled to receive a copy of the full oral decision (which he is not), he still would have to demonstrate that he suffered some prejudice as a result of not receiving the decision. *See, e.g., Ortiz–Salas v. I.N.S.,* 992 F.2d 105, 106 (7 Cir. 1993)("A litigant who seeks reversal on the ground of a denial of due process that is due to an inaccurate or incomplete transcript is therefore required to make the best feasible showing he can that a complete and accurate transcript would have changed the outcome of the case."); *Scott v. Elo,* No. 00–CV–71894, 2001 WL 277040, *7 (E.D.Mich. 2001)("a state prisoner seeking federal habeas must demonstrate prejudice due to a missing transcript before a constitutional violation of a right to a fair appeal will be found."); *Bransford v. Brown,* 806 F.2d 83, 86 (6 Cir. 1986), *cert. denied,* 481 U.S. 1056, 107 S.Ct. 2198, 95 L.Ed.2d 853 (1987)("in order to demonstrate denial of a fair appeal, petitioner must show prejudice resulting from the missing transcripts."). As discussed, *infra,* Petitioner in the instant case is unable to establish that he endured any prejudice as a result of never receiving the transcript of the Immigration Judge's oral ruling.

In the instant case, the Petitioner has not demonstrated that he suffered any prejudice due to the failure to receive a copy of the Immigration Judge's oral ruling. He knew (or should have known) what the substance of the order was. Indeed, he was present by teleconference at the hearing when the Immigration Judge entered her order pretermitting the Petitioner's application for relief and he received a copy of the summary order. Additionally, Petitioner's assertion that he was unable to appeal the Immigration Judge's order is simply untrue; he did appeal the order to the BIA and then to the First Circuit.

Petitioner asserts in his opposition to the motion to dismiss that he was prejudiced because had he received a copy of the oral order, he would have been able to more fully prepare his appeal. That is, he planned to argue on appeal that the 1988 and 1996 laws categorizing his crimes as aggravated felonies could not be applied retroactively to him. He asserts that "[n]one of these arguments were raised before the BIA, because a transcript of the order of the Immigration Judge was necessary to buttress petitioner's arguments that [the Immigration Judge] incorrectly decided his case." (# 16, p. 26)

There are several answers to these complaints. First, Petitioner raised all of these issues at the April 5, 1999 hearing before the Immigration Judge. The Transcript of Hearing (# 17) reveals that Petitioner filed a motion to dismiss ". . . claiming that [the sex-related offense convictions] were not considered aggravated felonies prior to IIRIRA. . . and saying ". . . that the crimes occurred prior to November 18, 1998." *Id.* at 181. Evidently, the Petitioner had also filed a brief on the issue,[8] and when the Immigration Judge

---

8. The Immigration Judge noted that the Petitioner had "sent in some material" which was

". . . a motion and supporting memorandum, along with an affidavit and certificate of ser-

invited him to say anything further, he stated: "No, your Honor. I would just rely in [sic] the arguments and the supporting case law." (# 16 at 182–3) The Immigration Judge denied the motion citing the case of *Choeum v. INS*, 129 F.3d 29 (1 Cir. 1997). The denial is contained in that part of the transcript which the Petitioner acknowledges receiving. *Id.* at 183. In sum, the aware of the argument and had made the argument before the Immigration Judge; there is no reason why the argument could not have been raised before the BIA.

■ However, even if he had raised such an argument, it would have been squarely dismissed. It is well-established that "Congress intended the 1996 amendments to make the aggravated felony definition [in the Immigration and Nationality Act] apply retroactively to all defined offenses *whenever committed,* and to make aliens so convicted eligible for deportation notwithstanding the passage of time between the crime and the removal order." *Aragon–Ayon v. I.N.S.*, 206 F.3d 847, 853 (9 Cir. 2000); *see also Mohammed v. Ashcroft,* No. 99–10045, 2001 WL 930570 (11 Cir. 2001)("Congress also amended the overall definition of aggravated felony to make clear that the new definition of aggravated felony applied not only to future convictions, but also to convictions entered prior to IIRIRA...."); 8 U.S.C. § 1101(a)(43)("Notwithstanding any other provision of law..., the term [aggravated felony] applies regardless of whether the conviction was entered before, on, or after the date of enactment of this paragraph.").

The matter was fully explored in the *Choeum* case. As the First Circuit held:

IIRIRA § 321(c) establishes the "effective date" after which these definitions of "aggravated felony" are binding:

> The amendments made by this section shall apply to *actions taken* on or after the date of the enactment of this Act, regardless of when the conviction occurred.

IIRIRA § 312(c) (emphasis added). The IIRIRA was enacted on September 30, 1996, so federal courts may not hear appeals from "actions taken" regarding final orders for deportation occurring after September 30, 1996 where the basis for deportation is commission (at any time) of an "aggravated felony."

*Choeum,* 129 F.3d at 36.

" 'Actions taken' refers to 'actions taken' and decisions of the Attorney General." *Choeum,* 129 F.3d at 37. Clearly, the filing of the new charges by the INS in January, 1999 seeking Petitioner's deportation based on the sex-related offense convictions was an "action taken" by the Attorney General under whose jurisdiction the INS operates. Thus, the new definition of "aggravated felony" contained in IIRIRA, § 321(a) is fully applicable to the deportation proceedings commenced in January, 1999. It follows that the Petitioner has not been prejudiced by not having received the transcript of the Immigration Judge's oral decision. Even if it is assumed *arguendo* that he needed that part of transcript to appeal that issue, if he had raised the retroactivity argument at his appeal, it would have, without any doubt, failed.

Therefore, I find that Petitioner's petition has no merit. Petitioner has failed to establish that the Immigration Judge's order was based on Petitioner's vacated drug

vice for filing...and the motion is a motion to dismiss or terminate proceedings." (# 16 at p.

179)

conviction, that he was unable to appeal as a result of not receiving the transcript of the Immigration Judge's oral decision or that he was prejudiced as a result of not receiving the transcript.

## III. CONCLUSION AND ORDER

In sum, none of Petitioner's arguments are meritorious. Accordingly, it is OR-DERED that Respondent's Motion to Dismiss (# 4) be, and the same hereby is, ALLOWED and Judgment shall enter dismissing the Petition.