**Robert C. BRANSFORD,
Petitioner-Appellant,**

v.

**Robert BROWN; Dale Foltz,
Respondents-Appellees.**

No. 85–1872.

United States Court of Appeals,
Sixth Circuit.

Argued Oct. 10, 1986.

Decided Nov. 20, 1986.

Rehearing and Rehearing En Banc
Denied Jan. 7, 1987.

Stuart B. Lev, F. Michael Schuck, Asst. Defender (argued), Detroit, Mich., for petitioner-appellant.

Frank J. Kelley, Atty. Gen., Lansing, Mich., Jan J. Raven, Asst. Pros. Atty., Crim. Div., Wayne County, Detroit, Mich. (argued), for respondents-appellees.

Before ENGEL, JONES and NELSON, Circuit Judges.

NATHANIEL R. JONES, Circuit Judge.

The most important question presented by this appeal is whether the unavailability of transcripts of jury instructions is a *per se* violation of a criminal defendant's due process rights. We hold that it is not.

Petitioner, Robert Carl Bransford, was convicted in January 1973 of first degree felony murder and armed robbery. He was sentenced to life imprisonment. His trial counsel, Wilfred Rice, was originally appointed to represent petitioner on appeal. However, due to other commitments, Mr. Rice turned the case over to Leonard Townsend. Mr. Rice gave to Mr. Townsend a file with notes of those things that might be important on appeal. He also spoke

with Mr. Townsend about some issues that he felt were "very relevant" to the appeal. On behalf of petitioner, Mr. Townsend filed an appeal as of right in the Michigan Court of Appeals. This appeal, based upon a delay-in-arrest issue, was unsuccessful, and on March 20, 1974, the court of appeals affirmed petitioner's convictions.

Petitioner then filed a *pro se* application for new trial in Wayne County Circuit Court, which was denied on December 2, 1977. However, on May 19, 1978, the Michigan Court of Appeals reversed and vacated petitioner's armed robbery conviction on double jeopardy grounds, while denying petitioner leave to appeal the murder conviction. Petitioner filed an application for leave to appeal to the Michigan Supreme Court, and the prosecution filed a delayed application for leave to appeal. The Michigan Supreme Court granted petitioner's request for appointment of counsel, and the state appellate defender's office was appointed to represent him. However, his application for leave to appeal was subsequently denied.

Petitioner, with the aid of the state appellate defender's office, filed a reply to the prosecutor's motion for delayed appeal (which motion was later denied), and also filed a motion to show cause, pointing out for the first time that there were no transcripts of the trial court's instructions to the jury. Petitioner claimed that he was denied his due process right to a fair appeal due to the missing transcripts and that he was denied his sixth amendment right to effective assistance of counsel because his appellate attorney did not raise the transcript issue on appeal as of right. This show cause motion was denied by the Michigan Supreme Court on November 1, 1979. On April 15, 1980, petitioner filed a motion for peremptory reversal in the Michigan Supreme Court, which motion the court denied "without prejudice to [petitioner's] right to file a motion to settle the record in the trial court."

Petitioner then filed a motion to settle the record with the trial court. In an order dated July 24, 1980, the trial court certified

that the record was incomplete and that the missing transcripts were "irretrievably lost and incapable of being reconstructed." The court noted that, pending further direction from the Michigan Supreme Court, it was without jurisdiction to consider petitioner's motion for a new trial and/or an evidentiary hearing.

Subsequently, the Michigan Supreme Court denied petitioner's motion for reconsideration of its order denying peremptory reversal, but did so "without prejudice to [petitioner's] right to file a motion for a new trial in the trial court." On October 8, 1980, petitioner filed a motion for a new trial and for an evidentiary hearing in Wayne County Circuit Court, claiming that constitutional due process and sixth amendment violations arose in regard to the unavailability of the transcripts. On November 3 and 5, 1980, the trial court held an evidentiary hearing concerning those issues, at which petitioner, Wilfred Rice, Leonard Townsend, and Arthur Tarnow, an experienced appellate attorney, testified. On January 13, 1981, the trial court denied petitioner's motion for a new trial. Following this denial, petitioner exhausted his state court appeals with respect to the constitutional issues surrounding the unavailability of the transcripts.

Petitioner then filed a petition for writ of habeas corpus based upon those issues in the District Court for the Eastern District of Michigan. That court denied the petition on September 24, 1985, and we now affirm.

■ Before addressing petitioner's claims that he was denied due process in his direct appeal because of the missing transcripts and that he was denied effective assistance of counsel by his original appellate counsel's failure to obtain the transcripts, we must dispose of respondents' assertion that *Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977), precludes our consideration of these constitutional issues. The Supreme Court held in *Sykes* that federal courts would not review a claim which the state courts had declined to pass upon because of an inde-

pendent state procedural ground. However, because this doctrine arises from the principles of comity, *id.* at 81–85, 97 S.Ct. at 2503–06, this circuit has held that a federal court need not defer to a state procedural bar that has no foundation in state law. *Walker v. Engle,* 703 F.2d 959, 966 (6th Cir.), *cert. denied,* 464 U.S. 962, 104 S.Ct. 396, 78 L.Ed.2d 338 (1983). This circuit has also held that the *Sykes* rule does not apply when it is unclear whether the state appellate court has applied a procedural bar. *Id.* Respondents contend that Michigan does not allow a limitless number of appeals, and so the state courts applied a procedural bar to petitioner's constitutional claims set forth only in his third appeal. This alleged state procedural bar fits within both circumstances where *Sykes* does not apply. First, as the United States Supreme Court has noted, Michigan has no recognized rule that limits the number of appeals. *Anderson v. Harless,* 459 U.S. 4, 7–8, 103 S.Ct. 276, 277–78, 74 L.Ed.2d 3 (1982). *See also People v. Allensworth,* 401 Mich. 67, 257 N.W.2d 81 (1977) (supreme court awarding relief on second appeal), *cert. denied,* 435 U.S. 933, 98 S.Ct. 1509, 55 L.Ed.2d 531 (1978). Furthermore, a delayed motion for new trial, which is where the claims at issue arose, can be filed at any time under Michigan law. *People v. Parker,* 393 Mich. 531, 541, 227 N.W.2d 775, *cert. denied,* 423 U.S. 849, 96 S.Ct. 91, 46 L.Ed.2d 72 (1975). Second, the state courts clearly considered this case on the merits rather than applying a procedural bar to review. The trial court held an evidentiary hearing to investigate the merits of petitioner's constitutional claims. The trial court's opinion then addressed the merits of the claims and, while its opinion quoted some language regarding the undesirability of late appeals, the purpose of the quote seems to have been to point out the difficulty of demonstrating prejudice in this case after memories have faded and transcripts have been irretrievably lost. Therefore, we now reach the merits of petitioner's claims.

Although the states are not constitutionally required to provide for appeals from criminal convictions, where an appeal is provided it must meet the requirements of due process. *Griffin v. Illinois,* 351 U.S. 12, 18, 76 S.Ct. 585, 590, 100 L.Ed. 891 (1956) (plurality opinion). Petitioner argues that his due process rights have been violated by the absence of transcripts of the jury instructions given at his trial. Because these transcripts are unavailable, he cannot comb them for errors, and so he argues that his ability to appeal has been prejudiced by the missing records. No specific errors in the instructions are proffered, but his trial attorney remembers having made some objections to the instructions.

■ The Supreme Court held in *Griffin v. Illinois* that it is a violation of equal protection to make available a trial transcript to those who can afford it, but to deny the transcripts to those who are indigent. *Id.* However, the Court in *Norvell v. Illinois,* 373 U.S. 420, 83 S.Ct. 1366, 10 L.Ed.2d 456 (1963), refused to extend *Griffin* to a case where the transcript was unavailable due to the death of the court reporter. In a statement that seems to govern the case at hand, the Court held:

a State, in applying *Griffin v. Illinois* to situations where no transcript of the trial is available due to the death of the court reporter, may without violation of the Due Process or Equal Protection Clause deny relief to those who, at the time of trial, had a lawyer and who presumably had his continuing services for purposes of appeal and yet failed to pursue an appeal.

*Id.* at 423, 83 S.Ct. at 1368 (footnote omitted). Lower courts, interpreting *Griffin* and *Norvell* in the context of cases where transcripts were simply missing, have held that the fourteenth amendment does not require a word-by-word transcript where the production of such is impossible and the failure to produce the transcript is not invidiously motivated. *See United States ex rel. Smart v. Pate,* 318 F.2d 559 (7th Cir.1963); *United States ex rel. Hunter v. Follette,* 307 F.Supp. 1023 (S.D.N.Y.), *aff'd,* 420 F.2d 779 (2nd Cir.1969), *cert. denied,*

397 U.S. 1067, 90 S.Ct. 1506, 25 L.Ed.2d 689 (1970). We agree with these decisions, and hold that in this case, where the defendant's trial attorney communicated with his appellate attorney, the absence of the jury instruction transcripts is not a *per se* denial of his due process right to a fair appeal.

■ Instead, in order to demonstrate denial of a fair appeal, petitioner must show prejudice resulting from the missing transcripts. *See, e.g., Mitchell v. Wyrick*, 698 F.2d 940, 942 (8th Cir.), *cert. denied*, 462 U.S. 1135, 103 S.Ct. 3120, 77 L.Ed.2d 1373 (1983); *United States ex rel. Cadogan v. LaVallee*, 428 F.2d 165, 168 (2nd Cir.), *cert. denied*, 401 U.S. 914, 91 S.Ct. 887, 27 L.Ed.2d 813 (1971). Although this court recognizes the difficulty in demonstrating prejudice where the transcripts are missing, petitioner must present something more than gross speculation that the transcripts were requisite to a fair appeal.

In this case, petitioner is able only to note that errors have frequently been found in the instructions for felony murder trials, and so a reversible error might have occurred at his trial. His trial attorney, however, was unable at the state evidentiary hearing to recall his specific objections to the jury instructions, and his testimony indicated that any such objections were not among the issues he considered to be especially relevant to an appeal. In these circumstances, an inference that prejudice resulted from the missing transcripts would simply be too farfetched. Any time a page is missing from a transcript we cannot assume that reversible error may have been reflected on that page, but rather some modicum of evidence must support such a conclusion. This is especially true when a defendant's trial attorney has communicated with his appellate attorney, and so it seems unlikely that an error was vital to a direct appeal yet was ignored. *See Norvell*, 373 U.S. at 424, 83 S.Ct. at 1368. Accordingly, we hold that petitioner's due process right to a fair appeal has not been denied by the absence of his jury instruction transcripts.

Petitioner next contends that he was denied his sixth amendment right to effective assistance of counsel because his original appellate counsel did not attempt to locate the missing transcripts and did not raise that issue on appeal. In *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the Supreme Court set forth the standards for such a claim:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial [or appeal], a trial [or appeal] whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or ... sentence resulted from a breakdown in the adversary process that renders the result unreliable.

*Id.*, 104 S.Ct. at 2064.

■ We agree with petitioner that Mr. Townsend's performance as his appellate counsel was deficient. Although Mr. Townsend testified that he twice read the trial transcript of over nine hundred pages, he somehow failed to notice that the jury instructions and subsequent proceedings were missing, and so he never attempted to obtain them. As the Supreme Court has noted, appellate counsel's duty cannot be discharged unless he has a transcript of the court's charge to the jury. *Hardy v. United States*, 375 U.S. 277, 282, 84 S.Ct. 424, 428, 11 L.Ed.2d 331 (1964). Indeed,

> the most basic and fundamental tool of [an appellate advocate's] profession is the complete trial transcript, through which his trained fingers may leaf and his trained eyes may roam in search of an error, a lead to an error, or even a basis upon which to urge a change in an established and hitherto accepted principle of law. *Anything short of a com-*

*plete transcript is incompatible with effective appellate advocacy.*

*Id.* at 288, 84 S.Ct. at 431 (Goldberg, J., concurring) (emphasis added and footnote omitted). Justice Goldberg noted that this is true even when trial counsel is the same as appellate counsel. *Id.* Thus, Mr. Townsend's failure even to *discover* that the transcripts for the final proceedings were absent fell below professional norms for appellate representation.

Although appellate counsel's performance was deficient, he did review the bulk of the trial proceedings and perfected an appeal on behalf of petitioner, which appeal was heard on the merits. Therefore, petitioner did not suffer the actual or constructive absence of the assistance of counsel which is legally presumed to result in prejudice. *Schwander v. Blackburn,* 750 F.2d 494, 501–02 (5th Cir.1985).

Accordingly, petitioner must affirmatively prove prejudice—"that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 104 S.Ct. at 2068. Once again, this court recognizes the difficulties inherent in an attempt to prove prejudice when no record exists of the proceedings at issue. Still, petitioner must present us with something more than rank speculation.

Petitioner here has failed to present us with anything upon which we can base a finding of prejudice. First, as the federal district court noted, there is no indication that the transcripts of the jury charges could have been located or reconstructed at the time of petitioner's appeal of right. Consequently, whether his counsel searched for the transcripts may have had no effect on their availability for use on appeal. Second, even if his counsel could have obtained the transcripts, we have before us not even a modicum of evidence that the transcripts would have revealed reversible error. Appellate counsel's failure to look for the instructions, while inexcusable, does indicate that the trial attorney never expressed a belief that the instructions were important to an appeal. In the absence of any evidence to the contrary, we must therefore hold that petitioner failed to prove prejudice resulting from his attorney's deficient performance.

Accordingly, we AFFIRM the order of the district court.