**Derrick A. JACKSON, Petitioner,**

v.

**Paul RENICO, Respondent.**

**No. CIV.A.03–40128.**

United States District Court,
E.D. Michigan,
Southern Division.

June 3, 2004.

Sheldon Halpern, Royal Oak, MI, for Derrick Jackson, Petitioner.

Brenda E. Turner, Michigan Department of Attorney General, Habeas Corpus Division, Laura G. Moody, Michigan Department of Attorney General, Habeas Corpus Division, Lansing, MI, for Paul Renico, Warden, St. Louis Correctional Facility, Respondent.

## OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

GADOLA, District Judge.

### I. Introduction

Petitioner Derrick A. Jackson ("Petitioner") brings this petition for the writ of habeas corpus pursuant to 28 U.S.C. § 2254, through counsel. Petitioner is a state prisoner currently confined at the St. Louis Correctional Facility in St. Louis, Michigan. Petitioner alleges that he is incarcerated in violation of his constitutional rights. For the reasons set forth below, the Court will deny the petition.

### II. Procedural Background

On February 13, 1997, Petitioner was convicted by a Detroit Recorder's Court jury of one count of first-degree felony murder pursuant to M.C.L. § 750.316(1)(b), one count of second-degree murder pursuant to M.C.L. § 750.317, and one count of possession of a firearm during the commission of a felony, M.C.L. § 750.227b. The trial court vacated the second-degree murder conviction and sentenced Petitioner to consecutive terms of life imprisonment without parole for first-degree felony murder and two years of imprisonment for felony firearm possession.

Petitioner appealed his convictions and sentences to the Michigan Court of Appeals. The Michigan Court of Appeals affirmed his convictions and sentences. *People v. Jackson,* No. 202140, 2001 WL

1134709 (Mich.Ct.App. Sept.18, 2001). The Michigan Supreme Court denied Petitioner's application for leave to appeal on May 29, 2002. *People v. Jackson,* 466 Mich. 869, 645 N.W.2d 661 (2002). On May 29, 2003, Petitioner filed this habeas petition setting forth the following claims:

I. Petitioner claims that he was prejudiced because the jury instruction portion of Jackson's trial was not transcribed and could not be reconstructed. Petitioner claims that this omission violated his constitutional rights to appeal and to effective assistance of appellate counsel. Petitioner also claims that the Michigan Court of Appeals' decision regarding the missing transcript was based on an unreasonable determination of the facts and resulted in a decision that was contrary to clearly established federal law.

II. Petitioner claims that his constitutional rights to confrontation were violated by the state trial court allowing the prosecutor to admit a hearsay statement made by Petitioner's non-testifying co-defendant. Petitioner also claims that the Michigan Court of Appeals' decision regarding Petitioner's confrontation rights involved an unreasonable application of clearly established federal law.

III. Petitioner claims that the state trial prosecutor engaged in deliberate misconduct by eliciting a statement from a witness that Petitioner was the shooter, immediately after the witness testified that someone else was the shooter. Petitioner claims that he was thereby denied a fair trial.

For the reasons stated below, the Court will deny the petition on each of these claims.

### III. Factual Background

Petitioner's convictions arise from the murder of Terrance Gaines ("Gaines").

On the night of his murder, Gaines left a nightclub in Detroit and gave three women, Sharonda May ("May"), Dufacha Jackson ("Ms.Jackson"), and Corey Ester ("Ester"), a ride to Ms. Jackson's home on Margaret Street. May testified that Gaines appeared to be dozing off at the wheel while driving. Shortly after dropping off the women, Gaines apparently fell asleep or passed out from alcohol consumption a few blocks away, while still behind the wheel of his car.

Ester made arrangements for May and herself to be picked up from Ms. Jackson's residence and driven home. In response to a phone call from Ester, Phillip Harris ("Harris") and Petitioner arrived at Ms. Jackson's residence in Petitioner's Ford Expedition. The group in Petitioner's vehicle drove past Gaines's car, which was off the road and in a neighbor's yard by the bushes. After circling the block, Petitioner, May, and Ester exited Petitioner's vehicle, approached Gaines's vehicle, and knocked on the window. Gaines did not respond. They then returned to Petitioner's vehicle and Petitioner drove May to her home. Petitioner then drove Ester and Harris to Harris's home. Ester testified that, after Petitioner dropped them off, she stayed there with Harris until approximately 5:00 a.m., at which time she went home in a cab.

Linda Norris ("Ms.Norris"), who lived on Margaret Street, testified that she awoke at approximately 3:30 a.m. to a dog barking. She then saw a car two or three houses down the street parked in a neighbor's lawn. The car was running with its headlights on. Ms. Norris then saw a vehicle pass by the parked car. She saw two men approach the car on foot. After walking around the parked car, the two men walked toward their car, which resembled a Blazer, then returned to the parked vehicle. One man appeared to

have a towel draped over his neck. One of the men broke the driver's side window and began fighting with the vehicle's occupant. Ms. Norris then heard four or five gunshots and saw muzzle flashes. One man then pulled the occupant out of the vehicle and threw him down towards the side of the street.

Raymond Robinson ("Robinson") first testified outside the presence of the jury. Robinson stated that Lashawn Holston ("Holston") told him, in the presence of three friends, that Petitioner and *Harris* did *not* shoot Gaines. Rather, Holston had said that Petitioner and *Holston* were together, that Petitioner had shot the victim, and that Harris was neither present nor a participant in the shooting. The trial court ruled after argument that Holston's out-of-court statements to Robinson were admissible to Petitioner's jury under Michigan Rule of Evidence 804(3)(b).

Robinson then testified somewhat differently in the presence of Petitioner's and co-defendant Holston's juries. Specifically, Robinson testified that, in the presence of three friends, Holston said that he, Petitioner, *and Harris* went to Margaret Street to commit a robbery. Robinson reported that Holston said that the man in the car, Gaines, was unconscious when they arrived. One of the men, Petitioner or Harris, wanted to break a car window. Because it would be too noisy, they went back to Petitioner's vehicle and got something with which to break the window more quietly. Petitioner and Harris then broke the window. One of them, Petitioner or Harris, hit Gaines in the jaw. Petitioner then hit Gaines and Gaines fought back. Harris then told Petitioner to shoot Gaines. Petitioner acted like he did not want to do so and told Harris to shoot Gaines. Robinson reported that *Harris* then shot Gaines. The prosecutor next asked Robinson if Holston said how many times *Petitioner* shot the victim. Robin-

son replied, "[t]hree times." Trial Tr. Vol. III at 192.

Tony Saunders of the Detroit Police testified that he executed a search warrant of the home of Albert Jackson, Petitioner's father, where Petitioner lived with his parents. Officer Saunders testified that he seized a holster, a box of live .45 caliber ammunition, and a .45 caliber handgun found underneath a mattress in Petitioner's room. Sergeant Dale Johnston of the Detroit Police Firearms and Explosives Unit testified that, in his expert opinion, the bullets and bullet casings recovered from the crime scene were fired by the .45 caliber handgun seized from Petitioner's bedroom.

Petitioner gave a statement to Sergeant Joan Kinney of the Detroit Police. Because Sergeant Kinney was unavailable to testify, an Assistant Wayne County Prosecutor read Sergeant Kinney's statement to the jury verbatim. Tr. Vol. VIII at 29–37. In the statement, Petitioner told Sergeant Kinney that he and Harris picked up two women on Margaret Street. While driving away from May's house, they saw Gaines's parked car. Petitioner and the two women got out of Petitioner's vehicle and knocked on the windows of Gaines's vehicle. Gaines did not wake up. Petitioner dropped off one woman and then dropped Harris and the other woman at Harris's home. Petitioner then went to Holston's house. Holston said that he needed money. Petitioner told Holston that he knew where some easy money might be found. Holston asked where and got a gun. Petitioner and Holston then drove to Margaret Street in Petitioner's vehicle. Petitioner let Holston out of the vehicle. Holston asked Petitioner to accompany him and they walked to the parked car together. Holston put the gun up to the window. Petitioner stopped him and then found a nearby log. They walked back down the

street. Petitioner went to get a towel and wrapped it around the log. Holston told Petitioner to break the window and that he, Holston, would do the rest. Petitioner then broke the window.

The statement further related that Holston opened the door and grabbed the victim and pulled him out of the front seat. The victim was then pushed towards Petitioner. Petitioner grabbed the victim while Holston entered the victim's vehicle from the passenger side. Petitioner struggled with the victim. Holston returned and put the gun to the victim's chest and then began hitting the victim with the gun. Petitioner then stepped away and walked back towards his vehicle. Petitioner heard gunshots. Petitioner went to his truck and Holston ran up behind with the log and gun in hand. Petitioner drove Holston to Holston's house. Petitioner kept the gun and put it under his bed. Tr. Vol. VIII at 30–37. At trial, Petitioner did not testify on his own behalf and did not call any witnesses.

## IV.   Standard of Review

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), codified at 28 U.S.C. § 2241 *et seq.*, govern this case because Petitioner filed this habeas petition after the AEDPA's effective date. *See Lindh v. Murphy,* 521 U.S. 320, 336, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997). The AEDPA provides:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Fed-

eral law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (1996).

The Supreme Court has explained that the phrase "clearly established Federal law" refers to "the holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." *Williams v. Taylor,* 529 U.S. 362, 412, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). In evaluating a state court decision under the "unreasonable application" clause, the Supreme Court stated that a federal habeas court "should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id.* at 411, 120 S.Ct. 1495. "Under § 2254(d)(1)'s 'unreasonable application' clause, then, a federal habeas court may not issue the writ simply because the court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.*

Additionally, § 2254(e)(1) requires that this Court presume the correctness of state court factual determinations. 28 U.S.C. § 2254(e)(1). A habeas petitioner may rebut this presumption only with clear and convincing evidence. *Warren v. Smith,* 161 F.3d 358, 360–61 (6th Cir.1998). The Court will examine Petitioner's claims according to these standards.

## V.   Untranscribed   Jury   Instructions Claim

■ Petitioner first argues that the failure to transcribe the jury instructions given at his trial and the inability of the court to reconstruct these instructions violated

his constitutional rights to a fair appeal of right and to effective assistance of appellate counsel. He further argues that these violations were prejudicial.

After remanding for an evidentiary hearing, the Michigan Court of Appeals noted that the trial judge listed on the record with counsel present the instructions she intended to give to Petitioner's jury. The Michigan Court of Appeals then determined that the trial judge instructed the jury with the instructions she stated she that she would use. The Michigan Court of Appeals concluded that the trial record showed that the proposed jury instructions appeared to be correct. The Michigan Court of Appeals also concluded that, even if there was an error with the instructions regarding Petitioner's allegedly false exculpatory statement, there was substantial evidence of Petitioner's guilt besides the allegedly false exculpatory statement to support his convictions. Consequently, any instructional error would be rendered harmless. *Jackson,* 2001 WL 1134709 at *4–8.

Petitioner also argues that he was prejudiced by the missing transcript regarding two potential jury instruction issues. Petitioner asserts that the lack of a transcript prevented him from challenging any improper cautionary instruction that may have been given regarding the admission of co-defendant Holston's statement to witness Robinson. Petitioner also claims that the lack of a transcript prevented him from raising ineffective assistance claims against trial counsel for any failure of trial counsel to challenge such an instruction. Finally, Petitioner asserts that the lack of a transcript prevented him from challenging any improper instruction regarding his allegedly false exculpatory statement.

The Sixth Circuit has addressed this issue, stating "federal habeas relief based on a missing transcript will only be granted where the petitioner can show preju-dice." *Scott v. Elo,* 302 F.3d 598, 604 (6th Cir.2002) (citing *Bransford v. Brown,* 806 F.2d 83, 86 (6th Cir.1986)). The Sixth Circuit further noted that "[a]lthough this court recognizes the difficulty in demonstrating prejudice where the transcripts are missing, petitioner must present something more than gross speculation that the transcripts were requisite to a fair appeal." *Bransford v. Brown,* 806 F.2d 83, 86 (6th Cir.1986). In *Bransford,* the Sixth Circuit "found insufficient Bransford's argument that errors are frequently found in jury instructions for felony murder trial, and his trial attorney's recollection that some unspecified objections were made." *Id.*

Petitioner maintains that he has presented more than gross speculation that instructional error may have occurred by referring to possible error concerning jury instructions regarding admission of Holston's statement to Raymond Robinson and Petitioner's false exculpatory statement. This Court disagrees. Petitioner has done no more than the petitioner in *Bransford* who asserted that instructional errors are often made concerning felony murder charges. Petitioner has not made a showing that he was prejudiced by any actual instructional error.

Furthermore, the Michigan Court of Appeals reasonably ruled that any error regarding Petitioner's false exculpatory statement would have been harmless because of the strength of the other evidence of his guilt. There was significant circumstantial evidence offered by a variety of witnesses that placed Petitioner at the scene of the crime around the time the crime occurred in his Ford Expedition. The gun that fired the bullets that killed the victim was found under Petitioner's mattress. The statement Petitioner gave to the police essentially admitted that he was guilty of aiding and abetting the killing of Gaines. This Court also concludes

that any instructional error concerning the hearsay statement offered by Robinson and Petitioner's allegedly false exculpatory statement would also have been harmless.

The Court concludes that Petitioner has not shown that he was prejudiced by the failure to transcribe the jury instructions in this case. This claim is therefore denied.

## VI. Right of Confrontation Claim

Petitioner next argues that his right of confrontation was violated by the admission of Raymond Robinson's testimony concerning the out-of-court statement made by Petitioner's non-testifying co-defendant Lashawn Holston. Robinson testified that Holston told him that he and Petitioner approached Gaines who was asleep or passed out in his car intending to "hit a lick, stick him up," that is, to rob him of valuables. Robinson further testified that Holston told him that they broke out the driver's side window with a log and that Petitioner hit Gaines with a gun and shot Gaines three times. Robinson also testified that Holston had told him Harris had shot Gaines.

The Michigan Court of Appeals addressed this claim as follows:

The next question is whether admission of the codefendant's statement violated defendant's right of confrontation. *See People v. Meredith,* 459 Mich. 62, 67, 586 N.W.2d 538 (1998). The Confrontation Clause requires a showing that the witness is unavailable and that the statement bears adequate indicia of reliability. *Id.* at 68, 586 N.W.2d 538, quoting *Ohio v. Roberts,* 448 U.S. 56, 66, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980). We again agree with the trial court, for the reasons it stated, that the codefendant's statement bears adequate indicia of reliability. As stated, the statement was voluntarily given to a friend, made spontaneously at the codefendant's initiation

and without prompting or inquiry by Robinson, and was made three days after the killing. Poole, supra at 165. Consequently, we conclude that the totality of the circumstances indicate that the codefendant's statement is sufficiently reliable to be allowed as substantive evidence even though defendant was not able to cross-examine the codefendant. Accordingly, the trial court did not abuse its discretion in admitting codefendant's Holston's unsworn, out-of-court statement against defendant at trial.

*People v. Jackson,* 2001 WL 1134709 at * 1–2, Mich. Ct.App. Docket No. 202140 at 1–2 (footnote omitted).

The Sixth Amendment provides, in relevant part: "In all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him[.]" U.S. CONST. amend. VI. The Supreme Court has held that, in certain instances, the admission into evidence of a nontestifying co-defendant's confession violates a defendant's right to confront the witnesses against him. *Bruton v. United States,* 391 U.S. 123, 136–37, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968). In *Ohio v. Roberts,* 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980), the Court explained that the underlying purpose of the Confrontation Clause is similar to that of the hearsay rule, that is, to exclude unreliable, out-of-court statements in criminal proceedings. Thus, the Supreme Court reasoned:

when a hearsay declarant is not present for cross-examination at trial, the Confrontation Clause normally requires a showing that he is unavailable. Even then, his statement is admissible only if it bears adequate "indicia of reliability." Reliability can be inferred without more in a case where the evidence falls within a firmly rooted hearsay exception. In other cases, the evidence must be ex-

cluded, at least absent a showing of particularized guarantees of trustworthiness.

*Roberts,* 448 U.S. at 66, 100 S.Ct. 2531. The Supreme Court has provided a line of cases holding that a co-defendant's custodial confession made to the police is inherently unreliable. *Douglas v. Alabama,* 380 U.S. 415, 85 S.Ct. 1074, 13 L.Ed.2d 934 (1965); *Cruz v. New York,* 481 U.S. 186, 107 S.Ct. 1714, 95 L.Ed.2d 162 (1987); *Lee v. Illinois,* 476 U.S. 530, 106 S.Ct. 2056, 90 L.Ed.2d 514 (1986). However, where, as here, the statements or confessions are made to friends or acquaintances, the situation is qualitatively different.

In *United States v. York,* 933 F.2d 1343 (7th Cir.1991), the Seventh Circuit affirmed the admission of a co-conspirator's statement against the defendant at his insurance fraud trial. The co-conspirator, Gail Maher, had made statements to two associates claiming that she and defendant Tom York had planned to blow up the lounge York owned in order to collect the insurance proceeds. *Id.* at 1360. Maher, having died, did not testify. The court affirmed the admission of Maher's statement, noting that it tended to subject her to such criminal liability that she would not have made the statement had it not been true. *Id.*

In *United States v. Seeley,* 892 F.2d 1 (1st Cir.1989), the First Circuit likewise upheld the admission of a co-conspirator's statement as against his penal interest. In *Seeley,* defendant Edward Seeley was charged in connection with two bank robberies. A fellow bank robber, Robert Wayne, made statements to his girlfriend that inculpated himself, Seeley, and three other men in the bank heists. *Id.* at 1. Wayne was found dead a month after the robberies, and was therefore unable to testify at Seeley's trial. The trial court allowed Wayne's girlfriend to testify to his statements, and the First Circuit upheld

their admission, finding that the statements bore sufficient indicia of reliability because Wayne would not have made such statements to his girlfriend had they not been true. *Id.* at 4; *see also United States v. Fields,* 871 F.2d 188 (1st Cir.1989) (affirming admission of Wayne's statements against another accomplice for same reasons).

In *United States v. Katsougrakis,* 715 F.2d 769 (2d Cir.1983), one of the co-conspirators, Kyriakos Chrisanthou, was badly burned while setting fire to the defendant's restaurant, and subsequently died from his injuries. The trial court allowed Chrisanthou's wife and Chrisanthou's friend to testify at Katsougrakis's fraud trial about statements that Chrisanthou had made to each of them implicating himself, as well as Katsougrakis and other co-conspirators, in a scheme to defraud Katsougrakis's insurers by setting fire to his business. The Second Circuit affirmed the admissions, finding sufficient indicia of reliability in Chrisanthou's statements because they were sufficiently against his penal interest. *Id.* at 775–76.

The same indicia of reliability noted in these cases are found in the present case. The defendant in each case made his statement, not to police, but to an acquaintance or a fellow accomplice. Therefore, at the time of the statement, none of the defendants was motivated by a desire to curry the favor of law enforcement officials. *See, e.g., Katsougrakis,* 715 F.2d at 775 (stating that Chrisanthou's statements bore adequate indicia of reliability only because they were made while "talking privately with his friend" and not to police).

■ In the present case, Lashawn Holston made the complained-of statement to an acquaintance, Raymond Robinson, not to the police. As the Michigan Court of Appeals noted, Holston's statement was

spontaneously and voluntarily made to a friend, without prompting or inquiry and was made only three days after the murder. Furthermore, Holston's statement was strongly self-inculpatory, although, according to Robinson, Holston identified Phillip Harris and Petitioner, not himself, as having shot the victim. It is unlikely that Holston would have told Robinson and other acquaintances of his involvement in this killing if it had not been true. Furthermore, Holston's statement was replete with details about the nature of the incident, which supports a finding that it was sufficiently reliable to admit in the absence of possible cross-examination.

This Court concludes that the Michigan Court of Appeals' determination that Holston's out-of-court statement to Robinson bore sufficient indicia of reliability to allow its admission through Robinson's testimony is a reasonable application of federal constitutional law. Therefore, Petitioner's claim lacks merit and will be denied.

Petitioner also argues that the state court erred by admitting Holston's statement wholesale, rather than in smaller parcels. Petitioner claims that the wholesale admission is inconsistent with *Williamson v. United States*, 512 U.S. 594, 114 S.Ct. 2431, 129 L.Ed.2d 476 (precluding admission under the statement-against-interest rule of a narrative statement or confession without analysis of whether each individual "declaration or remark" is actually inculpatory). However, *Williamson* involves the exception to the hearsay rule found in Federal Rule of Evidence 804(b)(3) for statements against the declarant's interest. By contrast, the Michigan court in Petitioner's case applied its own evidentiary rule, Michigan Rule 804(b)(3), in determining whether Holston's confession should be admitted via Robinson's testimony. This rule parallels, but need not be interpreted identically to, the federal provision.

■ The Michigan courts have not followed the United States Supreme Court's *Williamson* interpretation of the federal statement-against-interest rule. *See, e.g., People v. Beasley*, 239 Mich.App. 548, 609 N.W.2d 581, 585 (2000). Because the issue in *Williamson* was not related to the federal Constitution, state courts need not follow the federal courts' parcel-by-parcel approach to interpreting their own versions of the statement-against-interest exception to the hearsay rule. *See, e.g., People v. Newton*, 966 P.2d 563, 577 (Colo. 1998) (rejecting *Williamson* in favor of state-law precedents); *State v. Hills*, 264 Kan. 437, 957 P.2d 496, 503 (1998) (same); *State v. Sonthikoummane*, 145 N.H. 316, 769 A.2d 330, 334 (2000) (same); *Chandler v. Commonwealth*, 249 Va. 270, 455 S.E.2d 219, 225 (1995) (same); *State v. Julian*, 129 Ohio App.3d 828, 719 N.E.2d 96, 100 (1998) (same). *Williamson* is not federal constitutional law which the state courts are obliged to follow in their interpretation and application of the hearsay rule. Therefore, Petitioner's claim that the Michigan Court of Appeals' decision is contrary to *Williamson* does not entitle him to federal habeas relief, or even set forth a cognizable habeas corpus claim.

■ Furthermore, even if the admission of Holston's statement did violate Petitioner's right of confrontation, the error was harmless. In *Brecht v. Abrahamson*, 507 U.S. 619, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993), the Supreme Court ruled that trial error does not entitle state prisoners to habeas relief unless the error " 'had substantial and injurious effect or influence in determining the jury's verdict.' " *Id.* at 637, 113 S.Ct. 1710 (quoting *Kotteakos v. United States*, 328 U.S. 750, 776, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946)). In *Lee*, the Supreme Court noted that, even though there may be constitutional error in the admission of a non-testifying co-defen-

dant's admission, such error may be harmless. *Lee,* 476 U.S. at 547, 106 S.Ct. 2056 ("By holding that the consideration of Thomas' untested confession against Lee violated Lee's Confrontation Clause rights, we do not foreclose the possibility that this error was harmless when assessed in the context of the entire case against Lee.").

In this case, the admission of Holston's statement, even if erroneous, did not have a substantial and injurious influence on the jury's verdict. At the trial, the prosecution also introduced the statement given by Petitioner to the police. Although the two statements differ in who shot Gaines, Petitioner's own statement was compelling evidence that he was guilty of aiding and abetting the felony murder of Gaines, which occurred in the course of an attempted robbery. Petitioner's statement together with the other evidence of his guilt, particularly the finding of the murder weapon being under Petitioner's mattress, constituted overwhelming evidence of his guilt. Accordingly, Holston's statement to Robinson was merely cumulative and its admission, even if erroneous, was harmless. *See Idaho v. Wright,* 497 U.S. 805, 822–23, 110 S.Ct. 3139, 111 L.Ed.2d 638 (1990) (while reliability of hearsay evidence must be evaluated by its inherent trustworthiness without reference to corroborating evidence, such corroboration is relevant to the harmless error analysis); *Cruz v. New York,* 481 U.S. 186, 194, 107 S.Ct. 1714, 95 L.Ed.2d 162 (1987) (defendant's confession may be considered in determining whether error in admission of non-testifying accomplice's testimony was harmless); *Brown v. United States,* 411 U.S. 223, 231, 93 S.Ct. 1565, 36 L.Ed.2d 208 (1973) (error harmless when the improperly admitted evidence "was merely cumulative of other overwhelming and largely uncontroverted evidence properly before the jury.").

For all of the above reasons, the Court will deny Petitioner's confrontation claim.

## VI. Prosecutorial Misconduct Claim

Petitioner finally argues that the prosecutor committed intentional prejudicial misconduct by asking Raymond Robinson how many times *Petitioner* shot the victim, immediately after Robinson had testified that Holston told him that Phillip *Harris* had fired shots at the victim. This Court disagrees.

■ "On habeas corpus review, the standard to be applied to allegation of prosecutorial misconduct is whether the petitioner was deprived of a fundamentally fair trial." *Stumbo v. Seabold,* 704 F.2d 910, 911 (6th Cir.1983) (citing *Cook v. Bordenkircher,* 602 F.2d 117 (6th Cir.1979)). Habeas relief will not be granted based on prosecutorial misconduct unless the prosecutor's statement likely had a bearing on the outcome of the trial in light of the strength of the competent proof of guilt. *Byrd v. Collins,* 209 F.3d 486, 529 (6th Cir.2000). For relief to be granted, the misconduct must have " 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.' " *Darden v. Wainwright,* 477 U.S. 168, 181, 106 S.Ct. 2464, 91 L.Ed.2d 144 (1986) (quoting *Donnelly v. DeChristoforo,* 416 U.S. 637, 643, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974)).

■ Therefore, on habeas review, the standard of review is limited to " 'the narrow one of due process.' " *Darden,* 477 U.S. at 181, 106 S.Ct. 2464, (quoting *Donnelly v. DeChristoforo,* 416 U.S. at 642, 94 S.Ct. 1868). In making this determination, the reviewing court must bear in mind that " 'the touchstone of due process analysis ... is the fairness of the trial, not the culpability of the prosecutor.' " *Serra v. Mich. Dep't of Corr.,* 4 F.3d 1348, 1355 (6th Cir.1993) (quoting *Smith v. Phillips,*

455 U.S. 209, 219, 102 S.Ct. 940, 71 L.Ed.2d 78 (1982)). Therefore, even if the prosecutor's conduct was undesirable or condemnable, it does not constitute a due process violation unless "the conduct was 'so egregious so as to render the entire trial fundamentally unfair.' " *Pritchett v. Pitcher*, 117 F.3d 959, 964 (6th Cir.1997) (quoting *Serra*, 4 F.3d at 1355).

■ Petitioner fails to show that this prosecutor's statement, which was possibly an inadvertent slip of the tongue by the prosecutor, prejudiced him. Even if the prosecutor intentionally asked Robinson how many times Holston said Petitioner shot the victim after Robinson stated that Holston said Harris shot the victim, this Court would not be persuaded that this question would have rendered Petitioner's trial fundamentally unfair, or that this question was improper.

Defense counsel cross-examined Robinson as if Robinson had stated that Petitioner was the shooter. Moreover, there was evidence that two armed men had both fired guns at the victim during the fatal incident and that the murder weapon was the .45 caliber handgun found under Petitioner's mattress. Therefore, asking Robinson how many times Holston said Petitioner shot the victim was not an improper or impermissible question. In light of the evidence, it was possible that both Harris and Petitioner shot at the victim. Furthermore, in the light of the forensic evidence, it was possible that Petitioner alone shot the victim, even though Holston reportedly said that Harris shot the victim. In short, it was not prosecutorial misconduct to ask how many times Holston said Petitioner shot Gaines, despite Robinson having previously stated that Holston said Harris shot the victim.

Additionally, there was overwhelming evidence that Petitioner was guilty of aiding and abetting the murder of Gaines, regardless of who shot him. Therefore,

any error which asking this question may have constituted was harmless, because it would not have had a substantial and injurious effect on the jury's verdict. *Brecht v. Abrahamson*, 507 U.S. at 637, 113 S.Ct. 1710. For all of the above reasons, Petitioner's prosecutorial misconduct claim is denied.

## VI. Conclusion

For the reasons stated above, this Court concludes that Petitioner is not entitled to federal habeas relief from his convictions and sentences for first-degree felony murder and felony firearm.

**ACCORDINGLY, IT IS ORDERED** that the petition for a writ of habeas corpus [docket entry 1] is **DENIED** and the case is **DISMISSED WITH PREJUDICE.**

**IT IS FURTHER ORDERED** that, if Petitioner desires to seek a certificate of appealability ("COA"), he may file a **MOTION** for a COA with this Court within **FOURTEEN (14) DAYS** of filing a notice of appeal and shall support this motion with an appropriate brief, both of which shall comply with the Local Rules of this Court. *See Castro v. United States*, 310 F.3d 900, 903 (6th Cir.2002) (*"We do encourage petitioners as a matter of prudence to move for a COA at their earliest opportunity so that they can exercise their right to explain their argument for issuance of a COA."* (emphasis added)). Respondents may file a response with an appropriate brief, both of which shall comply with the Local Rules, within **SEVEN (7) DAYS** of service of Petitioner's motion for a COA. Petitioner may file a reply brief within **SEVEN (7) DAYS** of the service of the response.

**SO ORDERED.**