NOT FOR FULL-TEXT PUBLICATION
File Name: 06a0282n.06
Filed: April 27, 2006

No. 04-1854

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

DERRICK JACKSON,

      Petitioner-Appellant,          ON APPEAL FROM THE
                                   UNITED STATES DISTRICT
v.                            COURT FOR THE EASTERN
                                   DISTRICT OF MICHIGAN

PAUL RENICO,

      Respondent-Appellee.
_____/

BEFORE:    NORRIS, SUHRHEINRICH and ROGERS, Circuit Judges.

      **SUHRHEINRICH, Circuit Judge.** Petitioner Derrick Jackson appeals a district court

judgment that denied Jackson's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. The

district court also denied Jackson a certificate of appealability. On March 4, 2005, this Court

granted Jackson's application for a certificate of appealability with respect to three of his claims.

For the following reasons, we **AFFIRM** the district court's denial of the writ.

## I. Background

      Jackson and co-defendant Lashawn Holston were charged with first-degree felony murder

and possession of a firearm during the commission of a felony for the murder of Terrance Gaines.

Holston was also charged with armed robbery. The two were jointly tried to separate juries. On

February 13, 1997, Jackson was convicted of the charges against him. The state trial court sentenced

Jackson to consecutive sentences of life imprisonment without parole and two years of

1

imprisonment. The Michigan Court of Appeals affirmed the convictions, and the Michigan Supreme Court denied Jackson's application for leave to appeal. *See People v. Jackson*, No. 202140, 2001 WL 1134709 (Mich. Ct. App. Sept. 18, 2001) (per curiam), *appeal denied,* 645 N.W.2d 661 (Mich. 2002). Jackson then sought habeas relief, which the district court denied. *Jackson v. Renico*, 320 F. Supp. 2d 597 (E.D. Mich. 2004). He now appeals that judgment to this Court.

## II. Standard of Review

Because Jackson's habeas petition was filed after the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), this Court may not grant habeas relief with respect to any claim that the state court adjudicated on the merits unless the state court decision was (1) "contrary to" clearly established Supreme Court precedent, (2) "an unreasonable application" of clearly established Supreme Court precedent, or (3) "an unreasonable determination of the facts in light of the evidence presented." 28 U.S.C. § 2254(d); *see also Hodge v. Hurley*, 426 F.3d 368, 375 (6th Cir. 2005).

## III. Analysis

## A. Missing Transcript

First, Jackson claims that he was denied his due process right to a meaningful appeal because the trial court's instructions to the jury were never transcribed. He claims prejudice as a result.

While Jackson was preparing for his first appeal as of right to the Michigan Court of Appeals, he discovered that his jury instructions were not included in the trial transcript. The Michigan Court of Appeals held his appeal in abeyance and remanded. Upon concluding the transcript was unavailable, the court held an evidentiary hearing to settle the record. The trial court on remand (a different judge, Judge Timothy M. Kenny) found that the content of the jury

2

instructions given in Jackson's case was identical to the instructions given in co-defendant Holston's case. The trial court therefore ordered that the transcribed jury instructions for co-defendant Holston would serve as the settled record of jury instructions applicable to Jackson.

The Michigan Court of Appeals concluded that this ruling was clearly erroneous "because the jury instructions could not have been identical" since the charges against both defendants were not identical, and, whereas Holston testified, Jackson did not. *Jackson*, 2001 WL 1134709, at *4. Further, upon review of the trial record and the record of the evidentiary hearing, the appeals court found that prior to closing arguments, the trial judge, Judge Kim Worthy, cited the instructions she intended to read in regard to each defendant. *Id.* at *5 (quoting trial judge's recitation of instructions to be given). The appeals court further noted that the prosecutor who had been assigned to Judge Worthy's courtroom for two years and was present during the instructions testified it was customary for Worthy to always give the instructions she cites on the record. *Id.* at *6. The Michigan Court of Appeals therefore held "as a matter of law that Judge Worthy charged the jury as she indicated she would in the trial record. No evidence contradicts or places doubt on this conclusion." *Id.*

As an initial matter we note that the Michigan Court of Appeals' factual finding that Judge Worthy instructed the jury as she indicated she would is presumed correct pursuant to 28 U.S.C. § 2254(e).

Jackson claims that without a transcript of the actual instructions he cannot raise meritorious issues regarding trial counsel's possible failure to request a cautionary instruction involving Robinson's hearsay testimony. As noted, prior to closing arguments, Judge Worthy stated the exact instructions she intended to read to the jury, and she did not include a cautionary instruction

regarding Robinson's 804(b)(3) testimony. *See Jackson*, 2001 WL 1134709, at \*4. Trial counsel could have objected then, but did not. Moreover, had counsel requested such an instruction, the request would not have been reflected in the jury instructions themselves but rather in the record during the discussion regarding instructions that took place before closing argument. Thus, Jackson did not need the actual transcript of the jury instructions to raise a claim of constitutional error. Jackson simply failed to present such a claim to the Michigan Court of Appeals despite the record's clear indication that Judge Worthy did not give that instruction. Jackson therefore could have raised his ineffective assistance of counsel claim based upon the record as it existed, without the actual transcription of the instructions.

Jackson also contends that he was prejudiced because he does not know the content of the trial court's modified instruction regarding Jackson's false exculpatory statement. That is, he claims that since he cannot determine whether the instruction was appropriate, he is entitled to a reversal.

The Michigan Court of Appeals rejected this argument, noting that "defendant has not set forth any substantive argument in regard to this issue." *Jackson*, 2001 WL 1134709, at \*6 (citations omitted).

The Michigan Court of Appeals ruling is not contrary to, or an unreasonable application of, clearly established Supreme Court precedent. Although the Supreme Court has held that the due process clause is violated if an indigent defendant is denied a transcript, *Griffin v. Illinois*, 351U.S. 12 (1956) (plurality opinion), that a state may not block an indigent petty offender's access to an appeal afforded others, *Mayer v. Chicago*, 404 U.S. 189, 195-96 (1971), and that a new court-appointed attorney who represents an indigent attorney on appeal (but not at trial) is entitled to the entire trial transcript at public expense, *Hardy v. United States*, 375 U.S. 277, 279-80 (1964), it has

4

never held that the absence of a portion of a trial transcript automatically entitles the defendant to a retrial. In fact, in *Mayer*, the Supreme Court acknowledged that a "complete" record did not necessarily require a verbatim transcript, so long as the state found another means of providing an adequate record. *Mayer*, 404 U.S. at 194. In other words, "*Mayer* does not stand for the proposition, implicit in [Jackson's] argument, that where a portion of a trial transcript is missing and unobtainable, and where a defendant makes a claim that could possibly implicate that portion of the transcript, a retrial is always necessary." *Scott v. Elo*, 302 F.3d 598, 604 (6th Cir. 2002) (rejecting that the failure to transcribe a significant portion of the closing argument denied the petitioner due process).

This Court has held that federal habeas relief based on a missing transcript will only be granted where the petitioner can show prejudice. *Bransford v. Brown*, 806 F.2d 83, 86 (6th Cir. 1986). In *Bransford*, as in this case, this Court considered whether the unavailability of transcripts of jury instructions was a *per se* violation of due process. The trial court in that case had determined that the transcript of the instructions was irretrievable. The petitioner made no specific allegation of error, however. This Court held that there was no *per se* violation of prejudice, and stated that a petitioner "must show prejudice resulting from the missing transcripts." *Id.* at 86. The Court added that "[a]lthough this court recognizes the inherent difficulty in demonstrating prejudice where the transcripts are missing, petitioner must present something more than gross speculation that the transcripts were requisite to a fair appeal." *Id.*

In short, Jackson has not shown that the Michigan Court of Appeals' decision was contrary to or an unreasonable application of federal law. Furthermore, Jackson's claim would also fail under

the less deferential de novo standard of review articulated in *Bransford* because his claim is nothing more than gross speculation.

## B. Confrontation Claim

Jackson argues that the trial court violated his constitutional rights by allowing the prosecution to introduce evidence of a non-testifying codefendant's out-of-court statement during the trial. Specifically, Jackson argues that the admission of Robinson's testimony violated his Sixth Amendment right to confront his witnesses because the testimony contained an out-of-court statement made by Holston, Jackson's non-testifying co-defendant, that inculpated Jackson. The facts relevant to this claim were found as follows by the Michigan Court of Appeals:

> During trial, Raymond Robinson, an acquaintance of both defendant and codefendant Lashawn Holston, testified that Holston told him that defendant and Holston were involved in the robbery and killing of the victim in this case. Specifically, Holston told Robinson that he (Holston) and defendant robbed someone on Margaret Street. Holston indicated that the victim was sleeping in his vehicle when they went to the vehicle and used a club to break the passenger window. The victim woke up and started to struggle with defendant, and defendant hit the victim in his jaw with a gun. Holston then urged defendant to shoot the victim. According to Holston, defendant shot the victim three times. The trial court permitted Robinson to testify in this manner, over defendant's objection at trial.

*Jackson*, 2001 WL 1134709, at * 1.

The Michigan Court of Appeals held that Holston's hearsay statement was properly admitted as a statement against interest under Michigan Rule of Evidence 804(b)(3) (statement against interest).

> The trial court found, and we agree, that the statement was admissible as a statement against interest pursuant to *Poole* [*People v. Poole*, 444 Mich. 151, 163, 506 NW2d 505 (1993)]. Here, the codefendant's statement was voluntarily given, made to a friend, uttered spontaneously at the initiation of the declarant without prompting or inquiry by the listener, was made in the context of a narrative of events, was made three days after the killing, and was clearly against the codefendant's penal interest. *Id.* at 161. Further, the fact that the codefendant's statement

6

identified defendant as the shooter does not compel exclusion of the statement. As noted by the trial court, the codefendant's statement implicated himself as an aider and abettor during the commission of the crime. This is not a situation where the codefendant's statement shifted all blame to the defendant. *Id*.

The Michigan Court of Appeals therefore concluded:

> To the extent that defendant argues that our Supreme Court's decision in *Poole* was overruled by *Williamson v. United States*, 512 U.S. 594 . . . (1994), we note that this same argument was rejected by this Court in *Beasley*. As noted in *Beasley*, *supra* at 556, our Supreme Court in *Poole* was interpreting MRE 804(b)(3), while the United States Supreme Court in *Williamson* was ruling on the federal rule of evidence. Consequently, we are bound by our Supreme Court's decision in *Poole*. . . .

Addressing the Confrontation Clause aspect, the Michigan Court of Appeals stated, as

follows:

> The next question is whether admission of the codefendant's statement violated defendant's right of confrontation. See *People v. Meredith*, 459 Mich. 62, 67; 586 NW2d 538 (1998). The Confrontation Clause requires a showing that the witness is unavailable and that the statement bears adequate indicia of reliability. *Id.* at 68, quoting *Ohio v. Roberts*, 448 U.S. 56, 66 . . . (1980). We again agree with the trial court, for the reasons it stated, that the codefendant's statement bears adequate indicia of reliability. As stated, the statement was voluntarily given to a friend, made spontaneously at the codefendant's initiation and without prompting or inquiry by Robinson, and was made three days after the killing. *Poole*, *supra* at 165. Consequently, we conclude that the totality of the circumstances indicate that the codefendant's statement is sufficiently reliable to be allowed as substantive evidence even though defendant was not able to cross-examine the codefendant. Accordingly, the trial court did not abuse its discretion in admitting codefendant's [sic] Holston's unsworn, out-of-court statement against defendant at trial.

*Jackson*, 2001 WL 1134709, at *2 (footnote omitted).[1]

---

[1]The Supreme Court of Michigan has held that where a "[co]-defendant's inculpation of an accomplice is made in the context of a narrative of events, at the declarant's initiative without any prompting or inquiry, that as a whole is clearly against the declarant's penal interest and as such is reliable, the whole statement - *including portions that inculpate another* - is admissible as substantive evidence at trial pursuant to MRE 804(b)(3)." *People v. Poole*, 506 N.W.2d 505, 510 (Mich. 1993) (emphasis added).

7

Jackson claims that the United States Supreme Court subsequently "overruled" *Poole* when it held that Federal Rule of Evidence 804(b)(3), the federal counterpart to MRE 804, allowed only those declarations or remarks which are individually self-inculpatory to be covered by the statement-against-interest exception to hearsay evidence. *See generally Williamson v. United States*, 512 U.S. 594, 600 (1994) ("The fact that a person is making a broadly self-inculpatory confession does not make more credible the confession's non-self-inculpatory parts."). Jackson contends that the sections of Holston's statement that inculpated Jackson were not against Holston's penal interests and should have been excluded. Thus, when the trial court allowed the testimony to be admitted, it did so in clear violation of United States Supreme Court precedent.

Michigan courts have chosen not to follow *Williamson*. *See, e.g., People v. Beasley*, 609 N.W.2d 548, 556 (Mich. Ct. App. 2000) ("It is clear that *Williamson* clearly repudiates [*Poole's*] interpretation . . . and that *Williamson* is relevant in interpreting MRE 804(3)(b). Nevertheless, the Michigan Supreme Court is not bound by the federal application."). Further, as the district court noted, *Williamson* involves the federal rule. *See Jackson*, 320 F. Supp.2d at 605. As this Court recently held in an unpublished decision, "[b]ecause *Williamson* was neither directly nor indirectly (through avoidance principles) informed by the Federal Constitution, state courts need not follow the federal courts' parcel-by-parcel approach to interpreting their own versions of the statement-against-interest exception to the hearsay rule." *Bailey v. Pitcher*, 86 F. App'x 110, 115 (6th Cir. 2004) (unpublished). Thus, the Michigan Court of Appeals' decision is not contrary to or an unreasonable application of *Williamson*.

Jackson also complains that the Michigan Court of Appeals decision violated his rights under the Confrontation Clause. The Confrontation Clause gives the defendant the right "to be confronted

with the witnesses against him." U.S. Const. amend. VI; *see also Pointer v. Texas*, 380 U.S. 400, 403 (1965). Thus, the constitutional right to confront adverse witnesses as a general rule prevents a court from admitting an out-of-court statement against a criminal defendant. *See California v. Green*, 399 U.S. 149, 155-58 (1970). There are limited exceptions to this rule, however. When a hearsay declarant is unavailable for cross-examination at trial, his non-testimonial statement can nonetheless be admitted "if it bears adequate 'indicia of reliability.'" *Ohio v. Roberts*, 448 U.S. 56, 66 (1980). The leading Supreme Court case dealing with non-testimonial hearsay statements at the time of Jackson's trial was, and still is, *Roberts*.[2] *Roberts* observed that "[r]eliability can be inferred without more in a case where the evidence falls within a firmly rooted hearsay exception. In other cases, the evidence must be excluded, at least absent a showing of particularized guarantees of trustworthiness." *Id.* at 66. This Court recently observed that "under *Roberts* and its progeny, a co-defendant's self-inculpatory statement that also inculpates the defendant will satisfy the admissibility standards of the confrontation clause only if the statement fits within a firmly rooted hearsay exception or otherwise bears particularized guarantees of trustworthiness." *United States v. Franklin*, 415 F.3d 537, 547 (6th Cir. 2005). Further, "[u]nder *Roberts* and its progeny, if hearsay statements do not fit within a firmly rooted hearsay exception, they are nevertheless admissible if they bear particularized guarantees of trustworthiness." *Id.* at 548.

---

[2]Although the Supreme Court has criticized the *Roberts*'s reliability test, *see Crawford v. Washington*, 541 U.S. 36, 63 (2004) ("The unpardonable vice of the *Roberts* test, however, is not its unpredictability, but its demonstrated capacity to admit core testimonial statements that the Confrontation Clause plainly meant to exclude."), "with respect to non-testimonial hearsay statements, *Roberts* and its progeny remain the controlling precedents," *Franklin*, 415 F.3d at 546. Moreover, the Supreme Court in *Crawford* did not expressly overrule the *Roberts* decision. *Id.*; *see also United States v. Gibson*, 409 F.3d 325, 338 (6th Cir. 2005) ("*Crawford* dealt only with testimonial statements and did not disturb the rule that non-testimonial statements are constitutionally admissible if they bear independent guarantees of trustworthiness.").

*Franklin* is instructive here. In *Franklin*, as in this case, the defendant objected to a co-defendant's out-of-court statements implicating both the co-defendant and the defendant. This Court, under de novo review, held that the although the statements were not admissible under a firmly rooted hearsay exception, they bore particular guarantees of trustworthiness under *Roberts* because they were self-inculpatory and made to a close friend. *See Franklin*, 415 F.3d at 548 (holding that the codefendant's statements "[bore] such guarantees [under *Roberts*]" and were therefore admissible). Thus, to the extent the statement inculpated the defendant, there was no basis to conclude that the co-defendant intentionally made the statement to "curry favor" with the authorities. *Id.* at 548.

Here, the state court of appeals reached the same conclusion on virtually identical facts; namely that Holston's statement implicating Jackson bore sufficient indicia of reliability because it was voluntarily made to a friend and not law enforcement. Thus, as in *Franklin*, Holston's non-testimonial statement made spontaneously to a friend was properly admitted under *Roberts* because it bore particularized guarantees of trustworthiness. And of course, if the admission of the statement satisfied *Roberts* under a de novo review, the state courts' decision was not contrary to or an unreasonable application of any clearly established Supreme Court precedent.

### C. Prosecutorial Misconduct

Finally, Jackson argues that the state prosecutor engaged in deliberate misconduct when she elicited from witness Robinson that Jackson, not Harris, was the shooter. The following colloquy took place at trial between the prosecutor and Robinson:

Q. And then what did Mr. Holston say?
A. That they bust out the window. The guy awoke and started to fight back and they hit him. One of them hit him in the jaw. Dee [defendant] hit him and the guy kept

fighting back and he told Derrick to shoot him, but Derrick act like he didn't want
to shoot the guy and kept telling him to shoot him and Phil [Harris] shot him.
Q. Did Mr. Holston say how many times Mr. Jackson shot the person?
A. Three times.

*Jackson*, 2001 WL 1134709, at *3.

As to this claim, the Michigan Court of Appeals ruled that:

First, we note that defense counsel did not object to this line of questioning,
therefore, the issue was not preserved. Moreover, we do not agree with defendant's
characterization that the prosecutor engaged in deliberate misconduct. As the
prosecution states in its appellate brief, it is just as possible that the prosecutor at trial
either misheard Robinson's testimony (which went uncorrected by Robinson) or that
there is an error in the transcription if the testimony. [FN2] Therefore, we find no
error requiring reversal with respect to this issue.

FN2. The prosecution's claim in this regard that there is probably an
error in the transcription of the testimony seems the more likely.
Having reviewed the transcripts, we note that they are fraught with
errors.

*Jackson*, 2001 WL 1134709, at *3.

The Michigan Court of Appeals noted Jackson's lack of a contemporaneous objection to the

alleged prosecutorial misconduct. Thus, Jackson procedurally defaulted this claim by failing to

comply with Michigan's contemporaneous objection rule. *See Lancaster v. Adams*, 324 F.3d 423,

436-37 (6th Cir. 2003); *Casnave v. Lavigne*, No. 04-2052, 2006 WL 304581, at *9 (6th Cir. Feb. 9,

2006) (unpublished); *Grayer v. McKee*, 149 F. App'x 435, 441 (6th Cir. 2005) (unpublished).[3] Nor

has Jackson established cause and prejudice to excuse his default. *See id.* at 749-50. Jackson is

therefore not entitled to habeas relief.

___

[3]The fact that the state appellate court ruled in the alternative does not change the result here.
*See Scott v. Mitchell*, 209 F.3d 854, 867 (6th Cir. 2000) ("By its very definition, the adequate and
independent state ground doctrine requires the federal court to honor a state holding that it is a
sufficient basis for the state court's judgment, even when the state court also relies on federal law.")
(internal quotation marks and citation omitted).

In any event, any misconduct was harmless in this case. *See Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (holding that a petitioner is entitled to habeas relief only if the error had a "substantial and injurious effect or influence in determining the jury's verdict"). Robinson's statement placed Jackson at the scene of the murder as a co-conspirator and participant in the armed robbery. Even if, as Robinson stated, Harris was the shooter, Jackson's participation in the armed robbery was sufficient to find him guilty of first-degree felony murder.

### III. Conclusion

For the foregoing reasons, the judgment of the district court denying Jackson's petition for writ of habeas corpus is **AFFIRMED**.